**Anthony J. DeCINTIO,**
**Plaintiff-Appellant,**

v.

**WESTCHESTER COUNTY MEDICAL CENTER; County of Westchester,**
**Defendants-Appellees.**

No. 152, Docket 86–7260.

United States Court of Appeals,
Second Circuit.

Argued Sept. 15, 1986.

Decided June 8, 1987.

Anne Golden, White Plains, N.Y. (Silverman & Sapir, Donald L. Sapir, White Plains, N.Y., of counsel), for plaintiff-appellant.

Colleen Lundwall Kellman, Asst. Co. Atty., White Plains, N.Y. (Henry J. Logan, Westchester Co. Atty., Kenneth E. Powell, Deputy Co. Atty., White Plains, N.Y., of counsel), for defendants-appellees.

Before OAKES, MINER and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff appeals from a judgment of the United States District Court for the Southern District of New York dismissing his complaint.[1] This retaliation case was brought to redress the alleged deprivation of rights secured to plaintiff by Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.* (1982)), 42 U.S.C. §§ 1981 and 1983 (1982), the Fair Labor Standards Act (29 U.S.C. § 215(a)(3) (1982)), and the fourteenth amendment.

### Background

Anthony DeCintio was one of several Westchester County Medical Center staff respiratory specialists who sued the medical center and the county under Title VII, alleging sex discrimination. That case was recently decided, adversely to DeCintio, by this court. *DeCintio v. Westchester County Medical Center*, 807 F.2d 304 (2d Cir. 1986). Appellant alleges in this action that appellees retaliated against him, by suspending and firing him, because he was the "ringleader" of the disaffected respiratory specialists.

Appellees counter that DeCintio was fired for violating hospital policy on two occasions. Specifically, the hospital charges DeCintio with failure to respond properly to an emergency situation on May 23, 1984 when he refused to deliver a ventilator to the emergency room as requested by nurse Stephen Marchwinski. The patient in question was in critical condition. The hospital also charges DeCintio with failure to respond properly, on February 6, 1985, to several respiratory therapy "stat" pages emanating from the emergency room

1. Since, as will appear, matters outside the pleading were presented to and not excluded by the district court, the motion to dismiss was in effect treated as one for summary judgment and disposed of as provided in Fed.R.Civ.P. 56, pursuant to Fed.R.Civ.P. 12(b)(6).

where nurses and doctors were caring for a critically ill patient.[2]

One day after the February 6 incident, DeCintio was suspended without pay for thirty days. A hearing was thereafter held pursuant to N.Y.Civ.Serv.Law § 75 (McKinney 1983 & Supp.1987). The hearing officer found DeCintio guilty of misconduct and incompetence based on the May, 1984 and February, 1985 incidents, and recommended that appellant be "terminated from employment." The hearing officer's recommendation was accepted by Westchester County Medical Center Commissioner Bernard M. Weinstein, who informed appellant of his immediate dismissal by letter dated June 26, 1985.

On November 9, 1984, and July 13, 1985, appellant filed complaints with the New York State Division of Human Rights ("SDHR") charging the medical center with retaliation. SDHR dismissed both complaints for lack of probable cause on November 27, 1985. The instant action was commenced on December 6, 1985.

*Unsworn Statements*

At the outset, we are faced with an attack on the procedural bona fides of certain written statements attached to appellant's sworn affidavit submitted in opposition to the motion to dismiss (which, as indicated in note 1 *supra,* was in effect treated as a motion for summary judgment). No objection was made to the form of such statements below. On appeal, however, appellees contend that Fed.R.Civ.P. 56(e) precludes their consideration, below and here, in opposition to appellees' motion.

The first statement is a typed declaration that:

> The persons who have signed this paper are willing to appear before a Federal Judge and tell him that:
>
> 1) They are members of the Respiratory Therapy Department at the Westchester County Medical Center.
>
> 2) Each and every one of them has responded to "stat calls" and personal noti-

fications of an emergency situation in the same manner as Mr. DeCintio has so responded.

> 3) Mr. DeCintio has been suspended and terminated from employment at the Westchester County Medical Center for so responding.
>
> 4) None of the persons signing below has been disciplined by the hospital administration for acting likewise.
>
> 5) The hospital administration has been made aware of the way we have responded since we have been employed by them.

The statement is signed by six individuals. A second identical typed statement signed by five individuals was also attached to appellant's sworn affidavit.

A third statement signed by one C. Follini states that Assistant Personnel Director Jeffrey Sweet told Follini, "I know Tony [appellant] is the ringleader ... but he won't be around much longer, we will get him out."

A fourth statement signed by respiratory therapist Peter Piazza charges that Mr. Sweet, in the course of a discussion about the legal action brought against the hospital, told Piazza that "in the past year I have personally fired three members of the Respiratory Therapy Department, and no amount of fighting back will enable them to come back, ever again." Whereupon Associate Hospital Director Edward Stolzenberg allegedly interjected, "everyone in the Respiratory Therapy Department can be fired and completely replaced." This conversation is asserted to have occurred during DeCintio's suspension but prior to his termination.

Appellees are now objecting for the first time that the statements attached to appellant's sworn affidavit are not themselves sworn or certified as required by Fed.R. Civ.P. 56(e), which provides in pertinent part:

Rule 56. Summary Judgment

. . . .

---

**2.** In addition, DeCintio allegedly failed to order two respiratory therapists, who were on lunch break, to respond to the calls.

(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. *Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.*

Fed.R.Civ.P. 56(e) (emphasis added).

This court has ruled, however, that Rule 56(e) defects are waived where, as here, no motion to strike is directed to them below. *In Re Teltronics Services, Inc.,* 762 F.2d 185, 192 (2d Cir.1985).[3] As best we have been able to ascertain, the courts that have considered the question are in unanimous accord. *See, e.g., Davis v. Sears, Roebuck and Co.,* 708 F.2d 862, 864 (1st Cir.1983); *Scharf v. United States Attorney General,* 597 F.2d 1240, 1243 (9th Cir.1979); *Williams v. Evangelical Retirement Homes,* 594 F.2d 701, 703–04 (8th Cir.1979); *Associated Press v. Cook,* 513 F.2d 1300, 1303 (10th Cir.1975); *Klingman v. National Indemnity Co.,* 317 F.2d 850, 854 (7th Cir.1963). *See also* 6 J. Moore & J. Wicker, *Federal Practice* ¶ 56.22[1], at 56–1330 (1986); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2738, at 507–09 (1983).[4]

 It would be especially inappropriate to disregard unsworn attachments to appellant's affidavit in opposition to the motion for summary judgment in this case, since the district court considered unsworn and uncertified attachments to the affidavits provided by both sides. In particular, the district court appears to have been heavily influenced by the report of Hearing Officer Herbert Morris,[5] which was attached as Exhibit C to appellees' moving affidavit and was not sworn or certified, as Rule 56(e) requires. *See Mitchell v. Beaubouef,* 581 F.2d 412, 415 (5th Cir.1978). It would be unfair to preclude consideration of appellant's unsworn statements, which were clearly considered below (although deemed by the district court "hardly probative of anything"), where the judgment entered against appellant and before us on this appeal gave considerable weight to similarly defective documents tendered by appellees. Had appellees objected below to the introduction of appellant's unsworn statements, appellant could presumably have taken steps to meet that objection.[6] We conclude that the failure to complain below had the consequence of waiving the objection, and the unsworn statements are properly before us.

As will appear, at least with these statements taken into account, appellant was entitled to the denial of summary judgment as to aspects of his Title VII claim, but not as to the balance thereof or as to any of his other claims.

### Title VII Claim

*University of Tennessee v. Elliot,* —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), establishes the basic proposition that appellant is entitled to a trial *de novo* on his Title VII claim, since he did not seek state court review of the SDHR administrative proceedings adjudicated against him. As was there stated, after reviewing the legislative language and history of Title VII and pertinent Supreme Court precedents, "Congress did not intend unreviewed state administrative proceedings to have

---

**3.** In an earlier case, we determined that even if a motion to strike is made, it will be ineffective unless it identifies the defects in the affidavit under attack with adequate specificity. *Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 579 (2d Cir.1969).

**4.** There is also authority for the proposition that a non-movant's papers will be examined less stringently on a motion for summary judgment than those of the movant. *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985); *Maiorana v. MacDonald,* 596 F.2d 1072, 1080–81 (1st

Cir.1979); *Washington v. Cameron,* 411 F.2d 705, 709–10 (D.C.Cir.1969). See also 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2738 n. 31, at 484 (1983).

**5.** Mr. Morris conducted the hearing pursuant to Section 75 of the Civil Service Law which resulted in appellant's dismissal.

**6.** One can gather as much from the stated willingness of numerous signatories to "appear before a Federal Judge" and tell their stories.

preclusive effect on Title VII claims." 106 S.Ct. at 3225.

 To make out a *prima facie* case of retaliation under Title VII, appellant must show: protected participation or opposition under Title VII known by the alleged retaliator; an employment action disadvantaging the person engaged in the protected activity; and a causal connection between the protected activity and the disadvantageous employment action. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980). Proof of causal connection can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment, *Davis v. State University of New York*, 802 F.2d 638, 642 (2d Cir.1986), or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, *Simmons v. Camden County Board of Education*, 757 F.2d 1187, 1188–89 (11th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985), or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant. 3 A. Larson & L. Larson, *Employment Discrimination* § 87.31 (1986 & Supp.1987); *see also Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F.Supp. 318, 328–29 (D.Mass.), *aff'd*, 545 F.2d 222 (1st Cir.1976). Once a plaintiff has established his *prima facie* case, the employer must show a legitimate non-discriminatory reason for the alleged mistreatment. *Grant*, 622 F.2d at 46. The employee is then afforded an opportunity to prove that the employer's proffered reason for its conduct is pretextual. *Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38, 44 (2d Cir.1984).

In the instant case, appellant brought before the district court evidence that he was a plaintiff in a Title VII action then pending against appellees, and that appellees (through their supervisory personnel) knew of appellant's activities. DeCintio further showed that he was fired within one year of the filing of the original Title VII action. Finally, DeCintio proffered, through party admissions of Jeffrey Sweet and Edward Stolzenberg, and through the statements of fellow employees that they were not disciplined for engaging in identical behavior, direct and indirect evidence of a causal connection between protected activity and retaliation. In this connection, the district court's statement that the hospital's failure to discharge other employees for their similar derelictions is "hardly probative of anything" is not supported by the authorities. *Hill v. Coca Cola Bottling Co.*, 786 F.2d 550, 553 (2d Cir.1986).

 Appellees offered evidence showing that DeCintio was fired for gross misconduct. According to DeCintio's sworn affidavit, however, he acted properly and in accordance with hospital policy in both the May and February incidents, a conclusion partially corroborated by the sworn affidavit of Robert Burns, Chief Respiratory Therapist at the medical center from November 1982 to February 1984.[7] Even if there were no dispute as to the impropriety of DeCintio's conduct, the evidence of retaliatory animus on the hospital's part would suffice to defeat the summary judgment motion. *Rodriguez v. Board of Education*, 620 F.2d 362, 367 (2d Cir.1980). We therefore hold that there are genuine issues of material fact with respect to appellant's Title VII claim, and that the grant of summary judgment on this claim in favor of appellees was accordingly inappro-

---

**7.** With respect to his conduct during the May 1984 incident, DeCintio's affidavit states that the request for the ventilator was made without proper authorization from a doctor, in contravention of hospital policy. The Burns affidavit confirms DeCintio as to the pertinent hospital policy. With respect to the February 1985 incident, DeCintio's affidavit stated that he responded to the "stat" pages from Stephen Marchwinski by sending an assistant, Jose Gomes, to the emergency room. The affidavit further indicates that therapists Gloria Drenga and Michael Garayua, who were under DeCintio's supervision and were taking a lunch break, did not answer any of the "stat" calls from Nurse Marchwinski in accordance with hospital policy, reflected in a memorandum posted on the departmental bulletin board which stated that therapists should not work during lunch hour because they would not be paid. The Burns affidavit states that the memorandum in question was written and posted by Burns at the direction of Assistant Hospital Administrator Pradeep Gupte.

priate.[8] In doing so, we do not deprecate the burden which plaintiff will face at trial in establishing that the grounds for defendants' dismissal of plaintiff were pretextual, given the gravity of the life-threatening situations upon which those grounds were based.

### Other Claims

■ Appellees maintain that appellant's claim for relief under 28 U.S.C. § 1983 is barred by collateral estoppel.[9] Although the parties have focused most of their attention on the preclusive effect of the Section 75 proceeding, they have also discussed DeCintio's retaliation complaint before the SDHR, which resulted in a finding of no probable cause.[10]

Appellees contend that DeCintio is precluded from litigating the retaliatory discharge question because the Section 75 hearing was decided adversely to him. Appellant counters that he did not have a full and fair opportunity to litigate the issue, since the Section 75 proceeding was almost exclusively concerned with whether the charges of misconduct levelled against him were true.

*University of Tennessee v. Elliott* establishes that:

> [W]hen a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," [*United States v.*] *Utah Construction & Mining Co., supra,* 384 U.S., [394], at 422, 86 S.Ct. [1545] at 1560 [16 L.Ed.2d 642 (1966)], federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

— U.S. at ——, 106 S.Ct. at 3227.[11]

■ Here, DeCintio had an adequate opportunity to litigate the retaliation issue in his Section 75 hearing, although he appears on the record before us not to have availed himself significantly of that opportunity, in view of a provision of New York law which became effective on September 1, 1984 and established a prohibition against retaliatory action by public employers, which prohibition could be asserted as a defense in a Section 75 proceeding. N.Y. Civil Service Law § 75-b (McKinney Supp.1987). Preclusion is therefore appropriate if the courts of New York would so rule. *Migra v. Warren City School District Board of*

8. The district court found no evidence that Jeffrey Sweet, an employee of the hospital alleged to have expressed retaliatory animus against appellant, had any impact upon the decision of Hearing Officer Morris or upon Medical Center Commissioner Weinstein, who discharged appellant based upon Morris's hearing report. In the event, however, that appellees were motivated by retaliatory animus in instituting the Section 75 proceeding, Title VII would be violated even though there were objectively valid grounds for the proceeding and the resulting discharge. *Hill v. Coca Cola Bottling Co.,* 786 F.2d 550, 553 (2d Cir.1986), applies this rule to racial discrimination violative of 42 U.S.C. § 2000e–2(a) (1982); we deem the same rule to apply to retaliatory discrimination violative of 42 U.S.C. § 2000e–3(a) (1982). In terms of the traditional analysis in this area, the issue in either case would be whether the asserted basis for the hospital's action was pretextual. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–05, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); *Choudhury v. Polytechnic Institute of New York,* 735 F.2d 38, 44 (2d Cir.1984).

9. Our analysis of appellant's section 1983 claim is equally applicable to all of his claims which are not based on Title VII. See note 13, *infra.*

10. Collateral estoppel is an affirmative defense that must usually be pleaded. Fed.R.Civ.P. 8(c); 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4405 (1981). Appellees' Affidavit In Support Of Motion To Dismiss Or For Summary Judgment sets forth in detail DeCintio's charges before SDHR as well as the facts behind his New York Civil Service Law § 75 hearing. DeCintio has assumed throughout the litigation that appellees were raising the collateral estoppel issue. We conclude that the issue is properly before us. *W.E. Hedger Transportation Corp. v. Ira S. Bushey & Sons, Inc.,* 186 F.2d 236, 237 (2d Cir.1951); *see also American Furniture Co. v. International Accommodations Supply,* 721 F.2d 478 (5th Cir.1981). The lower court's failure to rule against appellant on collateral estoppel grounds does not preclude our doing so. *LaRocca v. Gold,* 662 F.2d 144, 148 (2d Cir.1981).

11. As indicated *supra,* pp. 114–115, *Elliott* explicitly excluded Title VII claims from the operation of this rule, based upon the language and legislative history of Title VII. See also note 13, *infra.*

*Education,* 465 U.S. 75, 83–85, 104 S.Ct. 892, 897–98, 79 L.Ed.2d 56 (1984). In any event, furthermore, the retaliation issue was in fact litigated in the proceeding before SDHR.

The rule of *University of Tennessee v. Elliott* accordingly requires that we give to these administrative proceedings the preclusive effect which they would be accorded by the courts of New York. In this regard, *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 467 N.E.2d 487, 478 N.Y. S.2d 823 (1984), establishes that under New York law:

> [T]he doctrines of *res judicata* and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies ... when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law....
>
> ....
>
> Of course, the issue must have been material to the first action or proceeding and essential to the decision rendered therein ... and it must be the point actually to be determined in the second action or proceeding such that "a different judgment in the second would destroy or impair rights or interests established by the first"....
>
> ....
>
> In the application of collateral estoppel with respect to administrative determinations, the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding.

62 N.Y.2d at 499–501, 467 N.E.2d at 489–91, 478 N.Y.S.2d at 825–27 (citations omitted).

The evidence presented to the district court showed that the sole basis of DeCintio's complaints to SDHR was the alleged retaliatory discrimination of appellees. The November 1984 complaint charged the medical center with general harassment and retaliation, and the February 1985 complaint charged retaliation based on DeCintio's suspension. The SDHR Regional Director, following an "investigation and ... review of related information and evidence with named parties," found no probable cause to support DeCintio's complaint, because, *inter alia,* "[t]here is no evidence that Respondent retaliated against Complainant." In his Rule 3(g) Statement of Material Disputed Facts, DeCintio stated that:

> 11. The continuing harassment and other retaliatory conduct referred to in the complaint filed by plaintiff with the New York State Division of Human Rights on or about November 9, 1984 was fleshed out during the course of the administrative proceedings and includes the conduct set forth in the complaint filed by plaintiff with this court.

Also in the record is a letter brief to the district court from appellant's attorneys, the same attorneys who represented appellant before the SDHR, stating that:

> In the instant case, the retaliatory conduct complained of by plaintiff was actually investigated by the State Division and EEOC as is made abundantly clear by the affidavits of plaintiff and plaintiff's former supervisor, Robert Burns, which were submitted to the State Division as part of its investigation. The determination of the EEOC was based upon the record and investigation made by the State Division.

The SDHR does not make a probable cause determination until the complainant has had "full opportunity to present on the record, though informally, his charges against his employer or other respondent, including the right to submit all exhibits which he wishes to present and testimony of witnesses in addition to his own testimony." *State Division of Human Rights v. New York State Drug Abuse Control Commission,* 59 A.D.2d 332, 336, 399 N.Y. S.2d 541, 544 (4th Dept.1977). Only where the record indicates "that there was a thorough inquiry during which the complainant was afforded a full opportunity to present her contentions," or where a complaint

"lacks merit as a matter of law," will an SDHR dismissal based on lack of probable cause be upheld. *Flah's Inc. v. Schneider*, 71 A.D.2d 993, 420 N.Y.S.2d 283, 284 (2d Dept. 1979). See also the discussion of SDHR procedures in *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 483–85, 102 S.Ct. 1883, 1898–99, 72 L.Ed.2d 262 (1982).[12]

Given the foregoing, it is apparent that appellant would be precluded under New York law from relitigating the retaliation issue brought before the SDHR. The retaliation issue was obviously material to the SDHR proceeding and "essential to the decision rendered therein." *Ryan* at 62 N.Y.2d 500, 467 N.E.2d 490, 478 N.Y.S.2d 826. Far from establishing that he did not have a full and fair opportunity to litigate, DeCintio admits to having "fleshed out" the issues at the SDHR hearing. We hold that DeCintio is precluded from relitigating the retaliatory discrimination issue in a federal action based on 42 U.S.C. § 1983.[13]

## Conclusion

The district court's dismissal of appellant's Title VII claim is reversed and remanded for further proceedings consistent herewith.[14] The district court's dismissal of appellant's other claims is affirmed.

MINER, Circuit Judge, dissenting:

Because the record is clear that DeCintio was dismissed from his hospital employment for gross derelictions of his professional duty and for no other reason, I would affirm the summary judgment entered in favor of Westchester County Medical Center.

Without question, DeCintio established a prima facie case of retaliation against the Medical Center by showing that he filed a Title VII claim of discrimination and thereafter was dismissed from his position. *See Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980). It then became incumbent upon the Medical Center to carry the burden of demonstrating a legitimate, non-discriminatory motive for the discharge. *Davis v. State University of New York*, 802 F.2d 638, 642 (2d Cir.1986). The employer carried that burden by submitting convincing evidence that DeCintio's behavior in two life-threatening situations was not worthy of any respiratory therapist, let alone the Assistant Chief of the Respiratory Therapy Department, a position to which

**12.** In view of these subsequent cases, and the ruling in *Emil v. Dewey*, 49 N.Y.2d 968, 406 N.E.2d 744, 428 N.Y.S.2d 887 (1980), that the mere filing of a complaint with SDHR "precludes the plaintiff from commencing an action in court based on the same incident," *see also, Spoon v. American Agriculturalist, Inc.*, 103 A.D.2d 929, 478 N.Y.S.2d 174 (3d Dept.1984), the question raised by this court in *Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 273 n. 10 (2d Cir.1977), as to the finality of an SDHR determination of no probable cause should be deemed resolved in favor of finality. *See Kirkland v. City of Peekskill*, 651 F.Supp. 1225, 1230 n. 2 (S.D.N.Y.1987).

**13.** The same analysis applies to DeCintio's claims under 42 U.S.C. § 1981, 29 U.S.C. § 215(a)(3), and the fourteenth amendment; *Elliott* precludes recovery. The holding in *Elliott* as to the preclusive effect of administrative rulings specifically applied to an action brought under the first, thirteenth and fourteenth amendments and 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988 (commonly referred to as the Reconstruction Civil Rights Statutes). See *Elliott v. University of Tennessee*, 766 F.2d 982, 987

(6th Cir.1985), *affirmed in part and reversed in part*, —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Moreover, nothing in the statutory language of the Reconstruction Civil Rights Statutes or 29 U.S.C. § 215(a)(3) calls for the kind of exception to collateral estoppel principles that *Elliott* fashioned for Title VII actions. The Title VII exception was based substantially upon the wording of 42 U.S.C. § 2000e–5(b), which requires the Equal Employment Opportunity Commission to give "substantial weight" to the findings of state or local authorities charged with enforcing anti-discrimination laws. The Supreme Court thought "it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *Elliott*, —— U.S. at ——, 106 S.Ct. at 3225.

**14.** The district court is reversed only as to the question of DeCintio's suspension and dismissal. DeCintio's allegations that he was improperly denied promotions, refused transfer to the day shift, and disciplined for arguing with a female employee were buttressed by no supporting material and were amply refuted by opposing affidavits and documents.

DeCintio was promoted after the filing of his original Title VII claim with the EEOC.

The situation on May 23, 1984 involved a one year old child who was brought to the Medical Center in severe respiratory distress. The Head Nurse in the Emergency Department, Stephen Marchwinski, testified at the hearing held pursuant to section 75 of the New York Civil Service Law that he called the Respiratory Department and told DeCintio, who was the day supervisor there, that he needed a pediatric ventilator. When DeCintio told him that a physician's order was necessary before a ventilator could be brought to the Emergency Room, the Head Nurse went to the Respiratory Department and renewed his request in person. According to the Head Nurse, DeCintio responded that only a doctor could order the equipment and then advised the other therapists not to respond. Another member of the Respiratory Department provided the equipment without further demand for authorization. In an affidavit submitted to the State Division of Human Rights, DeCintio substantially admitted these allegations: "Because of the apparent lack of a doctor's order and because I knew Mr. Marchwinski frequently attempted to order equipment on his own, contrary to hospital policy, I declined to get a ventilator without such an order and without specification of the type of ventilator needed." Joint App. at 89. His conduct on that occasion can only be characterized as shocking.

The incident of February 6, 1985 involved a patient who had been brought to the Emergency Department by helicopter. A ventilator provided for the patient malfunctioned, and Dr. John Savino, Chief of Trauma, ordered Head Nurse Marchwinski to place a "stat" call to the Respiratory Department for another ventilator. A "stat" call indicates that there is an emergency and that immediate attention is required. According to Marchwinski, the call went unanswered, and he proceeded to the Respiratory Department, where he found some therapists on lunch break. He then located DeCintio, who said he would take care of the situation. When no assistance was forthcoming, Dr. Savino proceeded to the Respiratory Department and restated the need for a ventilator in no uncertain terms. Eventually, the equipment was provided. DeCintio complains that "he was disciplined not because he himself failed to answer 'stat' pages but because he, as a supervisor, had failed to order other staff respiratory therapists on their lunch break to do so." Brief for Plaintiff-Appellant at 4. "DeCintio contends that in not giving that order he acted in accordance with Hospital policy." *Id.* The policy purportedly prohibited Respiratory Department employees from working during their lunch hour. The contention was and is ludicrous, and DeCintio understandably was suspended from his employment the following day. Dr. Savino believed that his patient's life was endangered in the incident.

To support his claim that there are genuine issues of material fact regarding his discharge, DeCintio submitted two identical, unsworn statements by members of the Respiratory Therapy Department. The statements were signed by a total of eleven department members, who asserted that they were "willing to appear before a Federal Judge" and testify: that each had responded to "stat" calls in the same manner as DeCintio; that the hospital was aware that they had so responded; and that none had been suspended or terminated for so responding. The statements have no probative value, however, because the signatories do not indicate, in any way, any knowledge of *how* DeCintio responded to "stat" calls on any particular occasion. It makes no sense to say that *each* therapist responded to *each* call in the same manner as DeCintio. Moreover, little credence can be given to allegations presented to the court in the form employed in these statements.

Two other unsworn statements were submitted in opposition to the motion for summary judgment. In a statement dated August 8, 1985, Christopher Follini, a technician in the Respiratory Therapy Department, asserted that he went to the office of Jeffrey Sweet, Assistant Personnel Director of the Medical Center, to discuss certain charges brought against him. At that meeting, alleged to have taken place in

**120**

October of 1984, Mr. Sweet is said to have told Mr. Follini that DeCintio was a "ring leader" who "won't be around much longer." The second statement was given by Peter A. Piazza, a staff respiratory therapist, who related a conversation that took place in Mr. Sweet's office on April 26, 1985. During that conversation, Mr. Sweet is alleged to have expressed general dissatisfaction with the Respiratory Therapy Department, stated that he had never lost a case, and asserted that three people he had fired would never return to employment. During the same conversation, Associate Hospital Director Edward Stolzenberg is alleged to have said that the Respiratory Therapy Department could be taken over by the Nursing Department and that all personnel in Respiratory Therapy could be fired and replaced. Mr. Piazza expressed his "belief" that the comments "directly relate[d] to the well-being of Mr. Anthony J. DeCintio."

The Follini statement raises no triable issue of retaliatory animus. Sweet's comment to Follini made no reference to retaliation, and, in light of DeCintio's previous unprofessional conduct, Sweet's desire to terminate the employment of DeCintio was quite understandable. Moreover, DeCintio's employment continued for an additional four months, until the second incident, providing further evidence of a lack of retaliatory animus. As to the Piazza statement, we have nothing other than the belief of Piazza that Sweet and Stolzenberg were referring to DeCintio in the conversation of April 26, 1985. Even if they were referring to him, DeCintio already was under suspension for his life-endangering conduct, and it hardly would have been unusual for hospital administrators to concern themselves with the reorganization of the Respiratory Therapy Department under the circumstances.

A motion for summary judgment requires the court to undertake "the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986). We have held that "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.) (conclusory allegations of discrimination insufficient to defeat defendants' motion for summary judgment in Title VII case), *cert. denied*, —— U.S. ——, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

Here, there are no genuine material issues of fact that can "reasonably" be resolved in DeCintio's favor to support his claim of retaliation. This simply is a case where a health professional was derelict in his duties and was fired for his derelictions. Even a retaliatory motive "does not establish a Title VII violation unless it was causally related to the adverse action, not merely in the mind of the employer." *Davis*, 802 F.2d at 645 (Newman, J., concurring). DeCintio was wholly unable to demonstrate a causal relationship between the termination of his employment and any retaliatory intent on the part of the Medical Center. He therefore is unable to satisfy the "but for" test. *Id.*

To summarize: DeCintio's conduct on two separate occasions, which jeopardized the lives of persons for whose care his employer was responsible, established a legitimate, nondiscriminatory, non-retaliatory motive for his discharge. He has failed to show that, even if there was a retaliatory motive behind his discharge, there was a causal relation between that motive and the discharge. Finally, there is no factual basis for a claim that the reasons given for the discharge were pretextual in nature. *Grant*, 622 F.2d at 46. As to all these matters, the evidence "is so one-sided that [defendants] must prevail as a matter of law." *Anderson*, 477 U.S. at ——, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.