Herman I. TAITT, Plaintiff–Appellant,

v.

CHEMICAL BANK, Defendant–Appellee.

No. 1212, Docket 88–7058.

United States Court of Appeals,
Second Circuit.

Argued May 25, 1988.

Decided June 17, 1988.

Sidney B. Silverman, New York City (Silverman & Harnes, Joan T. Harnes, Harold B. Obstfeld, Nancy A. Lester, of counsel), for plaintiff-appellant.

Ronald M. Green, New York City (Epstein Becker & Green, P.C., Susan Schenkel–Savitt, Kenneth J. Kelly, Carol S. Bernheim, Steven A. Moll, of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, NEWMAN and PRATT, Circuit Judges.

FEINBERG, Chief Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, Robert L. Carter, J., granting Chemical Bank's motion for a directed verdict at the close of evidence at a jury trial on Herman Taitt's claim under 42 U.S.C. § 1981 of retaliatory discharge for his opposition to the settlement of a class action law suit brought against the bank. For the reasons given below, the judgment of the district court is reversed and the matter remanded for a new trial.

## I. Background

In determining whether a directed verdict was proper in this case we of course view the evidence in the light most favorable to appellant. Utilizing that standard, there was sufficient evidence in the record to allow a jury to find as follows.

Herman Taitt was discharged by Chemical Bank in March 1984 after approximately 24 years of employment with the bank. In his early career at the bank, Taitt held several different managerial positions and he claims that for all of that time he was treated well by the bank. On a number of occasions in the mid-to late 1970's, Taitt, representing a group of black officers at the bank, went to top management of the bank seeking more programs for the bank's minority professional employees. He did not suffer retaliation for these actions. In fact, in 1977 Taitt was promoted to vice president and in 1978 was made a credit deputy in the bank's Commercial District 16 (CD 16) in Queens. Taitt received a rating of "commendable," the second highest of four possible ratings, for his 1978 performance, although there is some dispute as to Taitt's performance as credit deputy in CD 16. In 1979, Taitt requested

a transfer from CD 16, because his supervisor in CD 16 was leaving and Taitt did not wish to work for his replacement. Taitt was transferred to CD 10 in Manhattan. There was another credit deputy in CD 10 at the time of Taitt's transfer, but Taitt was told that the second credit deputy would soon be moving on and that he would assume the position of sole credit deputy. Taitt's performance in CD 10 for 1980 was rated commendable.

It was around this time that a class action was commenced against the bank on behalf of a class of black professionals claiming employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. *Plummer v. Chemical Bank,* 80 Civ. 7364 (WCC) (S.D.N.Y.) (the Plummer Action). See *Plummer v. Chemical Bank,* 91 F.R.D. 434 (S.D.N.Y. 1981), aff'd, 668 F.2d 654 (2d Cir.1982) (rejecting first proposed settlement); *Plummer v. Chemical Bank,* 97 F.R.D. 486 (S.D.N.Y.1983) (rejecting second proposed settlement); *Plummer v. Chemical Bank,* 579 F.Supp. 1364 (S.D.N.Y.1984) (approving final settlement). Taitt had no part in initiating the Plummer Action, but he became actively involved in the suit beginning in March 1981 when he, along with other members of the class, served an objection to a proposed settlement of the action. Those objections were successful in the district court, 91 F.R.D. 434, and on appeal in this court, 668 F.2d 654. Taitt also successfully opposed a second proposed settlement in the district court, 97 F.R.D. 486, and raised objections to a third proposed settlement that was ultimately approved by the district court in 1984, 579 F.Supp. 1364. As Taitt testified, his objections to the various proposed settlements became "a public matter.... [I]t was in the newspapers [and] it was in the American Banker."

Following Taitt's involvement in the Plummer Action, Taitt's career at the bank declined precipitously. When, as anticipated, the senior credit deputy left CD 10 in late March 1981, Taitt was not asked to replace him, but instead was asked to train a new credit deputy. Taitt spent the rest of the year without any job responsibilities.

Finally, in June 1982, Taitt was made team leader within CD 10, a position below that of credit deputy. Taitt served as team leader for about one year. While Taitt believed that his performance as team leader was very good, Paul Carr, who replaced Bruce Strong as CD 10 district head, initially rated Taitt's performance only as satisfactory, although Carr did propose a raise for Taitt of $2,300. However, after conferring with Carol Parry, the division head overseeing CD 10, Carr changed Taitt's rating to unsatisfactory, rescinded Taitt's proposed raise and removed Taitt as team leader. This turn of events occurred shortly after rejection of the second proposed settlement by the district court.

Taitt was then appointed new business manager for CD 10, a position that had been created only a year earlier. Taitt's predecessor in the job had been unable to generate new business, but received a satisfactory rating for his efforts. Taitt was required to call on the same accounts that his predecessor had. Taitt produced some new business for the bank, but received an unsatisfactory rating for his performance as new business manager. He was discharged in March 1984, shortly after the third settlement agreement became effective and after Taitt had filed a charge with the Equal Employment Opportunity Commission (EEOC) complaining of acts of retaliation by the bank. Both Carr and William Britton, who had succeeded Carr as CD 10 district head in October 1983, participated in the decision to fire Taitt, a decision that was discussed with people higher up in the bank, including Parry and possibly others.

In September 1984, the EEOC issued Taitt a right to sue letter and in November 1984 Taitt commenced this action in the district court. The bank moved for summary judgment in June 1985 on the ground that the court lacked jurisdiction to hear Taitt's claim because Taitt, as a member of the class covered by the consent decree in the Plummer Action, was bound to submit his claim of retaliation to the special master overseeing the decree. In May 1986, the district court granted the bank's motion

for summary judgment, ruling that the result in the Plummer Action was res judicata as to the appropriate forum for Taitt's claim. Taitt appealed and in January 1987 we reversed, holding that the parties to the Plummer Action had not intended to use the consent decree procedures to resolve retaliation claims. *Taitt v. Chemical Bank*, 810 F.2d 29 (2d Cir.1987).

A four-day jury trial was held in December 1987. Plaintiff's main case consisted primarily of testimony from Taitt and Roderick Plummer, a named plaintiff in the Plummer Action. At the conclusion of plaintiff's evidence, the bank moved for a directed verdict on the ground that Taitt had failed to meet his burden of establishing a prima facie case of retaliatory treatment. The court stated that Taitt's presentation of a prima facie case was "problematic," but reserved decision on the bank's motion and instructed the bank to proceed with its defense. The bank called several defense witnesses, including Strong, Carr, Parry and Britton, and at the close of evidence renewed its motion for a directed verdict. The court granted the bank's motion, but apparently did not rest its decision on Taitt's failure to establish a prima facie case, stating:

> I am not unsophisticated enough not to feel that there may have been something to what Mr. Taitt is claiming, but he has to prove the case and he had not presented a case that is sufficient in my judgment to go to the jury.
>
> On balance, he has not carried the burden of persuasion....

This appeal followed.

## II. Discussion

■ The elements required to make out a claim of retaliatory discharge under 42 U.S.C. § 1981 are the same as those required to make out such a claim under Title VII. *Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38, 44 (2d Cir.1984). Under the test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the employee has the initial burden of establishing a prima facie case of retaliation. The burden then shifts to the defendant to articulate a "legitimate,

nondiscriminatory reason" for its actions. Id. at 802, 93 S.Ct. at 1824. If the defendant meets this burden of production, then the plaintiff has the ultimate burden of persuasion to show that the reasons proffered by the defendant were not the defendant's true reasons, but rather a pretext for discrimination. To make out a prima facie case of retaliation, an employee must show that he was engaged in a protected activity; that he suffered an adverse employment decision; and a causal connection between the protected activity and the adverse employment decision. *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.), cert. denied, — U.S. —, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). As we stated in *DeCintio*,

> Proof of causal connection can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant.

Id. (citations omitted) (emphasis in original).

■ The bank argues that Taitt failed to establish a prima facie case of retaliation, claiming that he failed to show any causal connection between his protected activities and his dismissal. It claims that Taitt never offered any proof that his managers (Strong, Carr and Britton) or their superior (Parry) was motivated by a desire to punish him for his involvement in the Plummer Action. Further, the bank argues that Taitt's managers all testified that they were unaware that Taitt was *an objector* to the settlement of the action at the time they made adverse decisions concerning Taitt's employment. The bank also contends that the record indicates that Strong formed the opinion that Taitt would not become the new CD 10 credit deputy in February 1981, one month prior to Taitt's first involvement in the Plummer Action, and that Taitt's subsequent employment history was unrelated to his involvement in the Plummer Action.

We do not suggest that Taitt's evidence of retaliatory treatment is strong or uncontradicted. Nevertheless, we cannot agree with the bank that the evidence is so weak that a reasonable jury could not return a verdict in Taitt's favor. Viewing the evidence in the light most favorable to Taitt, we believe it is sufficient to establish a prima facie case of retaliation. There apparently is no dispute that Taitt engaged in protected activity and that he suffered at least some adverse employment decisions. The only dispute is whether Taitt established a sufficient causal link between his protected conduct and the adverse decisions. We believe the evidence of a causal link is sufficient to go to the jury.

Admittedly, there is no smoking gun. But there is evidence that Strong, by the end of March 1981, was aware that Taitt had become an objector in the Plummer Action; Carr was aware of "scuttlebutt" concerning Taitt's involvement in the Plummer action; and Parry assumed Taitt was involved in the Plummer Action even if allegedly unaware of his specific involvement. Certainly, some higher level officials at the bank were aware of Taitt's involvement. Moreover, a reasonable jury could infer a causal link based upon the public nature of Taitt's involvement in the action and the close proximity between his involvement and the start of his employment troubles at the bank. Finally, as we noted in *DeCintio*, 821 F.2d at 115, causality can be proven indirectly by pointing to similar disparate treatment of fellow employees engaged in similar activities. A reasonable jury could conclude that Taitt's fellow-employee Plummer had suffered adverse employment decisions as a consequence of his involvement in the Plummer Action. Plummer testified that from 1981 to 1984, when he left the bank, he was "treated differently" from other officers at the bank and that he attributed his failure to get promoted during this period to his participation in the class action. The fact that Plummer and Taitt were on opposite sides of the dispute over settlement of the action does not mean that the bank could not have been dissatisfied with both for the inconvenience and expense resulting from the action and with Taitt in particular for resisting the settlement.

We are thus satisfied that Taitt introduced sufficient evidence to establish a prima facie case of retaliation. And, although the bank articulated legitimate nondiscriminatory reasons for Taitt's treatment between 1981 and 1984, there is certainly sufficient dispute as to Taitt's qualifications and performance during this period to submit the question of pretext to a jury.

The judgment of the district court is reversed and the matter remanded for a new trial.