17-212-cv
Kiernan v. Town of Southampton

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

<u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of May, two thousand eighteen.

PRESENT: JOHN M. WALKER, JR.,
        DENNIS JACOBS,

                <u>Circuit Judges</u>,
      MICHAEL P. SHEA,*

                <u>District Judge</u>.

- - - - - - - - - - - - - - - - - - - - - -X
JAMES KIERNAN,
      <u>Plaintiff-Appellant</u>,

      -v.-                      17-212-cv

TOWN OF SOUTHAMPTON and WILLIAM WILSON, individually, and as former Police Chief of the Town of Southampton,

      <u>Defendants-Appellees</u>,

TOWN OF SOUTHAMPTON POLICE DEPARTMENT,
      <u>Defendant</u>.

- - - - - - - - - - - - - - - - - - - - - -X

---

* Judge Michael P. Shea of the United States District Court for the District of Connecticut, sitting by designation.

1

**FOR APPELLANT:**          Jason L. Abelove, Esq., Garden City, N.Y.

**FOR APPELLEES:**          Brian S. Sokoloff, Leo Dorfman, Sokoloff Stern LLP *for* Defendant-Appellee William Wilson, Carle Place, N.Y.

Cynthia Ann Augello, Cullen and Dykman LLP *for* Defendant-Appellee Town of Southampton, Garden City, N.Y.

Appeal from the judgment of the United States District Court for the Eastern District of New York (Feuerstein, <u>J</u>.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED IN PART**, and in part **VACATED AND REMANDED**.

James Kiernan appeals the judgment of the United States District Court for the Eastern District of New York dismissing on summary judgment his First Amendment retaliation claim against the Town of Southampton (the "Town") and its former Chief of Police, William Wilson. Kiernan alleges that Wilson mounted a campaign to damage his career as retaliation for Kiernan's refusal to advance Wilson's political and policy agenda at the Southampton Town Police Department (the "Department"). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Kiernan is a police lieutenant with the Department and an active member of Southampton's Republican Party who recently served several terms as Party Committeeman. He was approached in 2011 by Wilson to discuss Wilson's candidacy for Chief of Police. Kiernan declined to offer support, expressing preference for promotion from within the department. After his appointment as Chief of Police in May 2011, Wilson solicited Kiernan's assistance in his efforts to reform the Department and influence the Board's hiring and promotion decisions. App'x at 517-18. Specifically, it is proffered that between May 2011 and

February 2012, Wilson pressured Kiernan to sway reluctant Republicans on the Town Board, and warned of "consequences" if Kiernan refused.  App'x at 518-19, 521, 657.  Kiernan also suggests that Wilson conditioned Kiernan's promotion to lieutenant (and implicitly his retention of the rank beyond the six-month probationary period) on progress toward Wilson's reorganization plan.  App'x at 519.

Between December 2011 and February 2012, Wilson initiated investigations into Kiernan's job performance, specifically Wilson's stated concerns about Kiernan's supervision of the Street Crimes Unit ("SCU") and the purported mishandling of a situation involving an officer suffering from substance abuse.  In Kiernan's view, these investigations were prompted by Wilson's disappointment in a February 2012 promotion decision made by the Town Board, which Wilson attributed to a personal betrayal.[2]  These investigations led to 32 departmental charges lodged by Wilson against Kiernan.  Wilson also drafted three felony complaints and a Misdemeanor Information against Kiernan for theft of time from the Department, although the arrest papers were never served.

In the spring of 2012, Wilson wrote letters to the Town Board recommending it demote Kiernan to sergeant.  On May 4, 2012, in response to impending disciplinary charges against Kiernan, the Town Board voted to suspend him without pay.  He remained suspended for six months.  Kiernan ultimately accepted responsibility for four of the disciplinary charges related to personnel management at the SCU; the remaining 28 were dropped.  Kiernan was permitted to return to work at the rank of lieutenant, but Wilson curtailed his responsibilities and reduced his authority within the Department, which another officer characterized as a career "setback."  App'x at 685, 838.  Wilson resigned from the Department in November 2012.

---

[2] Because Kiernan failed to object to the Magistrate Judge's recommendation that his claim based on the investigation and charges as adverse action be dismissed, the argument has been waived for the purposes of this appeal.  See Mario v. P&C Food Mkts, Inc., 313 F.3d 758, 766 (2d Cir. 2002).

Kiernan brought a complaint against Wilson, the Town, and the Department under 42 U.S.C. §§ 1983, 1985 and 1986, alleging a deprivation of First and Fourteenth Amendment rights on the theory that Wilson had campaigned to end Kiernan's career in reprisal for Kiernan's non-support of Wilson's candidacy and agenda. A motion to dismiss was granted in part. After discovery on the remaining Section 1983 claims against Wilson and the Town, summary judgment was granted dismissing all remaining claims on the basis that Kiernan suffered no cognizable adverse outcome from the attempted demotion and arrest, and that in any event there was no causal connection between the purported adverse action and protected speech. The claims against the Town were dismissed because Kiernan had shown no policy or custom to support municipal liability.

We review *de novo* the grant of summary judgment, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the non-moving party." Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision, 831 F.3d 64, 71-72 (2d Cir. 2016) (internal quotation marks and citation omitted). Summary judgment should be granted "only if the moving party shows that there is no genuine dispute as to any material fact." Id. at 72 (citing Fed. R. Civ. P. 56(a)). We review in turn Kiernan's claims against the Appellees Wilson and the Town.

To establish a First Amendment retaliation claim, a public employee must prove: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech. Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011).

**First Amendment Speech**

"[A] public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." Connick v. Myers, 461 U.S. 138, 140 (1983) (citation omitted). "A court conducts a two-step inquiry to determine whether a public employee's speech is protected: The first requires determining whether the employee spoke as a citizen on a matter of public

4

concern." Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015) (internal quotation marks omitted). "This step one inquiry in turn encompasses two separate subquestions: (1) whether the subject of the employee's speech was a matter of public concern[;] and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." Id. (internal quotation mark and citation omitted).

Speech on "any matter of political, social, or other concern to the community" by a public employee may be protected by the First Amendment. Connick, 461 U.S. at 146. In deciding if speech addresses a matter of public concern, we consider "whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." Singer v. Ferro, 711 F.3d 334, 339 (2d Cir. 2013) (citation omitted).

The conduct at issue is Kiernan's refusal to exercise his supposed political influence and advocate Wilson's reorganization plan for the Department. "[T]he right of freedom of thought protected by the First Amendment ... includes both the right to speak freely and the right to refrain from speaking at all." Wooley v. Maynard, 430 U.S. 705, 714 (1977). Kiernan claims he acted on his views concerning the Department's operation and policies, including those governing promotion, selection, and forced retirement of senior officers, which are issues of municipal law enforcement policy that generally rise to the level of public concern. See Morris v. Lindau, 196 F.3d 102, 111 (2d Cir. 1999) (holding that comments by police officers on department policy issues including "police staffing, equipment shortages and related budgetary matters quite plainly involve matters of public concern" and thus "enjoy a constitutionally protected status"); Piesco v. City of New York, Dep't of Pers., 933 F.2d 1149, 1157 (2d Cir. 1991), abrogation on other grounds recognized by Cobb v. Pozzi, 363 F.3d 89 (2d Cir. 2004).

"[W]e ask two questions to determine whether a public employee speaks as a citizen: (A) did the speech fall outside of the employee's 'official responsibilities,' and (B) does a civilian analogue exist?" Matthews, 779 F.3d at

5

173 (citing <u>Weintraub v. Bd. of Educ. of City Sch. Dist. of City of. N.Y.</u>, 593 F.3d 196, 203-04 (2d Cir. 2010)).

It is not argued that communicating with the Town Board on policy issues was part of Kiernan's job description as a police sergeant or lieutenant. See <u>Matthews</u>, 779 F.3d at 174. Rather, Kiernan was solicited as a private citizen to influence individuals in his political network. A civilian analogue therefore exists for Kiernan's protected act. <u>Jackler v. Byrne</u>, 658 F.3d 225, 238, 241 (2d Cir. 2011). Kiernan meets the prima facie requirement for protected conduct under the First Amendment.

**Adverse Employment Action**

"In the context of a First Amendment retaliation claim ... only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." <u>Zelnik v. Fashion Inst. of Tech.</u>, 464 F.3d 217, 225-26 (2d Cir. 2006) (internal quotations marks, alterations and citations omitted). "Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." <u>Morris</u>, 196 F.3d at 110 (citing <u>Kaluczky v. City of White Plains</u>, 57 F.3d 202, 208 (2d Cir. 1995)). "[W]hether an undesirable employment action qualifies as being 'adverse' is a heavily fact-specific, contextual determination." <u>Hoyt v. Andreucci</u>, 433 F.3d 320, 328 (2d Cir. 2006).

The district court determined that Kiernan "did not suffer an adverse action as a result of Wilson's attempts to have him demoted or arrested, as he was never, in fact, demoted from the lieutenant position or arrested." <u>Kiernan v. Town of Southampton</u>, No. 14CV1831SJFAKT, 2017 WL 5495806, at *27 (E.D.N.Y. Jan. 9, 2017). However, there is no "exhaustive" list of retaliatory conduct, and "[t]his Court has never held that a public employee plaintiff alleging retaliation in violation of the First Amendment must demonstrate a material change in employment terms or conditions." <u>Zelnik</u>, 464 F.3d at 226-27.

A plaintiff may suffer adverse employment action even without "dismissal, reduction in pay, or demotion in rank."

6

Morris, 196 F.3d at 110.  "[L]esser actions may also be considered adverse employment actions" such as a negative job evaluation.  Zelnik, 464 F.3d at 226; see Bernheim v. Litt, 79 F.3d 318, 327 (2d Cir. 1996) (Jacobs, concurring); Brown v. Office of State Comptroller, 211 F. Supp. 3d 455, 463-64 (D. Conn. 2016).  Curtailment of job responsibilities may also be adverse.  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 70-71 (2006).

Wilson's alleged retaliatory conduct materially surpassed empty threats, see Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568, 571 (2d Cir. 2011); Wilson followed through on those threats by drafting criminal complaints against Kiernan and dispatching a negative recommendation to the Town Board, actions which may have resulted in substantial damage to Kiernan's career.  A reasonable juror could find that the prospect of the adverse consequences Kiernan experienced would deter an individual of ordinary firmness from the exercise of constitutional rights.  Drawing all factual inferences in favor of Kiernan, there are material factual disputes as to whether the attempted demotion and arrest constitute adverse action for the purposes of First Amendment retaliation.

**Causation**

"To demonstrate a causal connection a plaintiff must show that the protected speech [or conduct] was a substantial motivating factor in the adverse [] action." Smith v. County of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015) (internal quotation marks omitted).  "Plaintiffs may not rely on conclusory assertions of retaliatory motive, but must offer instead some tangible proof to demonstrate that their version of what occurred was not imaginary." Morris, 196 F.3d at 111.  A causal connection may be established either "*indirectly* by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant." DeCintio v. Westchester Cty Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987) (citations omitted) (emphasis in original).  A

7

defendant can rebut a prima facie showing of causal connection by demonstrating that the adverse action would have been taken "even in the absence of the protected conduct." Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); DeCintio, 821 F.2d at 115.

Kiernan argues that retaliation was a substantial motivating factor in Wilson's efforts to jeopardize Kiernan's career and freedom. The Appellees respond that there is no direct evidence of retaliatory animus, and that the alleged adverse acts followed too long after the claimed protected speech to allow for an inference of a causal nexus. Wilson also defends his attempts to demote and arrest his subordinate as adherence to Department procedures, and argues that the sole cause of any alleged adverse consequence was Kiernan's misconduct.

The record reveals some direct evidence of retaliatory animus. Deposition testimony from Kiernan and other members of the Southampton Police Department and Town Board suggests Wilson's conduct may have exceeded his mandate and was influenced by improper motivation. App'x at 518-19 (Kiernan's affidavit describing statements by Wilson); 645-47 (testimony of Board Member Christopher Nuzzi), 657 (statement of John Sideratos), 665, 690 (testimony of Officer Robert Pearce, including that Wilson's actions were "out of bounds"). The evidence of the attempted arrest also suggests disparate treatment compared to other police officers who violated the Department's timekeeping practices. Felony charges were contemplated (and drafted) to discipline conduct that multiple witnesses have acknowledged was widespread and never seriously penalized. See DeCintio, 821 F.2d at 115; Sumner v. U.S. Postal Serv., 899 F.2d 203, 209-11 (2d Cir. 1998) (finding constitutional deprivation when an employee was fired for a common infraction that had never before resulted in a firing or threat of firing).

We need not decide whether this direct evidence of retaliatory motive would alone suffice. Here, the proximity in time between the protected speech and the adverse action supports an inference of causation. See Smith, 776 F.3d at 118 ("A plaintiff may establish causation ... indirectly through a showing that the

8

protected activity was followed closely by the adverse action."); DeCintio, 821 F.2d at 115; see also Taitt v. Chemical Bank, 849 F.2d 775, 777-78 (2d Cir. 1988) (no "smoking gun" direct evidence of animus required at summary judgment stage). "No bright line defines the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," but a causal inference may be drawn when the speech and adverse action occur within a five-month period. Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 168 (2d Cir. 2006) (internal quotation marks and citation omitted) (holding that a three-month period is not "too long for any inference of retaliatory motive and causation to be drawn").

In gauging proximity, the district court focused on Wilson and Kiernan's interactions *prior* to Wilson's appointment as Chief of Police. Appellees likewise posit that Kiernan's protected acts "could only ha[ve] taken place before or at the time Wilson was appointed Chief in early May 2011," Brief of Appellee William Wilson ("Wilson Br.") at 41. But Kiernan's refusal to speak on Wilson's behalf was arguably continuous through the fall of 2011. The chronology between Kiernan's latest acts of protected speech and his attempted arrest and demotion is not entirely clear; but drawing all reasonable inferences in Kiernan's favor (which requires crediting his accounting of his interactions with Wilson), the protected speech occurred at least as recently as November 2011--within several months of the onset of adverse employment consequences. See App'x at 516-21 (offering evidence of speech activity after Kiernan's October 2011 promotion), 657. From this timeline, a jury could infer a causal connection between Kiernan's protected activity and the adverse action. See DeCintio, 821 F.2d at 115; see, e.g., Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252 F.3d 545, 555 (2d Cir. 2001) ("[w]e are particularly confident that five months is not too long to support" an allegation of First Amendment retaliation); Thermidor v. Beth Israel Med. Ctr., 683 F. Supp. 403, 411 (S.D.N.Y. 1988) (proof of causal connection "has been made inasmuch as plaintiff's discharge occurred five months after his" protected activity).

Viewing the entire record in the light most favorable to Kiernan, "it is sufficient to establish a prima facie case of retaliation." Taitt, 849 F.2d at 777-78 ("We do not suggest that [the plaintiff's] evidence of retaliatory treatment is strong or uncontradicted. Nevertheless, we cannot agree ... that the evidence is so weak that a reasonable jury could not return a verdict in [Plaintiff's] favor.").

Appellees argue that any inference of causation is foreclosed by the existence of legitimate grounds for the alleged adverse action. Although Kiernan accepted responsibility for four of the 32 disciplinary charges, a possible alternative justification for adverse action is not a complete defense to a charge of retaliation; the relevant question is whether Wilson would have visited the same adverse action upon Kiernan absent retaliatory animus. Mt. Healthy, 429 U.S. at 287. It is not at all clear that Kiernan's disciplinary infractions related to the Sickles investigation were the sole reason, or even a reason, for Wilson's hostility towards his lieutenant. That Wilson had the power or duty to investigate Department affairs does not insulate him from constitutional charge. Wilson now attributes the attempted demotion and arrest to his concerns about Kiernan's timekeeping and personnel management; but there are reasonable grounds for skepticism. The mix of testimony raises fair questions as to Wilson's motives and the degree to which his stated rationales were pretextual. E.g., App'x at 647, 657, 673-76, 726-27; Appellant's Br. at 12-17.

The causation inquiry boils down to a question of Wilson's motives--and which testimony the fact-finder should credit. Courts are "reluctant" to dispose of retaliation claims by summary judgment "where questions concerning the employer's state of mind predominate the inquiry into whether an employee's expression was a substantial or motivating factor in the adverse employment decision." Cobb, 363 F.3d at 108; see Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994) ("A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue."); see also Peacock v. Duval, 694 F.2d 644, 646 (9th Cir. 1982) ("[S]ummary judgment is inappropriate when

10

'questions of motive predominate in the inquiry about how big a role the protected behavior played in' the employment decision.") (internal citation omitted).

There are disputed issues of material fact as to whether Kiernan would have suffered the same consequences regardless of Wilson's alleged retaliation. Even if Wilson's narrative is more persuasive, "the evidence of a causal link is sufficient to go to the jury." See Taitt, 849 F.2d at 778. We therefore vacate the judgment of the district court dismissing the claims against Wilson and remand for further proceedings.

**Claims against the Town of Southampton**

Kiernan also appeals the dismissal of his claims against the Town.

There is no vicarious liability in a Section 1983 action. The Town's liability therefore cannot be based on a theory of *respondeat superior* stemming from Wilson's actions as Chief of Police. Goldberg v. Town of Rocky Hill, 973 F.2d 70, 72 (2d Cir. 1992); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam). Kiernan must instead show that the deprivation of his First Amendment rights resulted from a policy or custom of the municipality. Monell v. City of N.Y. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

Kiernan has failed to produce sufficient evidence of any such policy or custom. Id. at 694; Fed. R. Civ. P. 56(c). Kiernan advances three theories of municipal liability: (1) the conduct of the Chief of Police, Wilson; (2) his non-promotion to Captain; and (3) the passage of the Police Ethics Reform Law ("PERL").

When a plaintiff seeks to hold a municipality liable for the decisions of a municipal policymaker, the plaintiff must show that the official had final policymaking power. See City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988); Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). The evidence shows that the Town Board (not the Chief of Police) held final policymaking power over hiring, termination, and promotion decisions in the Department.

11

App'x at 668; see Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003). Kiernan also alleges that the failure to interview him for the Captain position reflects a Town policy or custom. But the evidence shows other candidates in the Department were more senior and received higher scores on the civil service promotion test. Kiernan cannot survive summary judgment on the conclusory assertion that he was denied promotion primarily due to a violation of his civil rights. In opposing summary judgment, a plaintiff must offer "some hard evidence showing that its version of the events is not wholly fanciful." Miner v. Clinton County, New York, 541 F.3d 464, 471 (2d Cir. 2008) (citation omitted). Kiernan offers no hard evidence of a discriminatory or retaliatory motive on the part of the Town.

Lastly, Kiernan argues that the Town passed the PERL, which prohibited police officers in the Department from serving as political party officials, in retaliation for his exercise of protected speech. After the Town Board enacted PERL, Kiernan was no longer permitted to be a committee person for the Republican Party. Kiernan submits that the Town must have been targeting him because he was the only full-time police officer impacted by the law.

Despite its outsized impact on Kiernan, there is no evidence that the law was designed or applied unequally. As the district court concluded, Kiernan's speculation about the Town's motives fails to raise a triable issue of fact. See Process Am., Inc. v. Cynergy Holdings, LLC, 839 F.3d 125, 141 (2d Cir. 2016). We therefore affirm the dismissal of all claims against the Town.

For the foregoing reasons, we hereby **VACATE** the dismissal of the claims against Appellee Wilson, **AFFIRM** the dismissal of claims against Appellee Town of Southampton, and remand for further proceedings in a manner consistent with this order.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

12