Carmen V. RODRIGUEZ, Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF EASTCHESTER UNION FREE SCHOOL DISTRICT, Robert W. Young, Superintendent of Schools of the Eastchester Union Free School District, and Ronald S. Lockhart, President of the Board of Education of Eastchester Union Free School District, Defendants-Appellees.

No. 954, Docket 80–7013.

United States Court of Appeals, Second Circuit.

Argued March 26, 1980.

Decided May 2, 1980.

Lewis M. Steel, New York City (Eisner, Levy, Steel & Bellman, P. C., New York City, of counsel), for Plaintiff-Appellant.

Susanna E. Bedell, Poughkeepsie, N. Y. (Van De Water & Van De Water, Poughkeepsie, N. Y., of counsel), for Defendants-Appellees.

Before KAUFMAN, Chief Judge, MES-KILL, Circuit Judge, and BRIEANT, District Judge.*

IRVING R. KAUFMAN, Chief Judge:

The principal goal of Title VII of the Civil Rights Act of 1964 is to achieve true equality in employment opportunities for women and racial, religious and national minorities who hitherto have been barred from competing on an equal basis in the national marketplace. Recognizing that job discrimination may take many forms, Congress cast the prohibitions of Title VII broadly to include subtle distinctions in the terms and conditions of employment as well as gross salary differentials based on forbidden classifications. In the instant case the district court dismissed the sex discrimination suit of a junior high school art teacher who was transferred to an elementary school in the same system, allegedly on the basis of her sex, essentially because the transfer entailed no loss of salary or other monetary benefits. We reverse.

I

Dr. Carmen Rodriguez is a junior high school art teacher with twenty years' experience. From September 1959 until June 1979, she taught in the Eastchester Union Free School District's single junior high school. During that period, she received both master's and doctoral degrees in art and art education from Columbia University, where her studies focused on programs for the junior high school student. Indeed, her doctoral dissertation was titled, "A Model Arts Program for the Middle School of Eastchester School District Number 1."

During the spring of 1979, it became apparent that, due to declining enrollment, the school district would no longer require the services of one of its art teachers. Accordingly, Superintendent Young decided that the art teacher with the least seniority—who happened to be a woman assigned to the Anne Hutchinson Elementary School—was not to be rehired the following year. On April 5, 1979, Dr. Rodriguez was informed by her principal, Dr. Mary Savage, that it would be necessary to replace the dismissed elementary school teacher, and that she was likely to be the teacher selected to fill the position. At that time, the junior high school employed two other art teachers, both males, neither of whom possessed Dr. Rodriguez's teaching credentials, and of whom one had less seniority. When Dr. Rodriguez protested that one of the male teachers would be better suited for the assignment, Dr. Savage allegedly replied, "They wouldn't have a male grade school art teacher." Indeed, it appears that in the last 22 years there has never been a male art teacher in the Eastchester elementary schools.

Dr. Rodriguez immediately wrote to the Superintendent of Schools, the President of the School Board, and to counsel for the school district, questioning "the legality, not to mention the insensitivity" of the decision. Superintendent Young's response was a formal notice dated May 3, 1979, informing Dr. Rodriguez of her transfer. (Young later stated that his decision was based, in part, upon the recommendation of Dr. Savage.) The following day Dr. Rodriguez learned that her position in the junior high was to be filled by a male art teacher with half her seniority who was to be transferred from the district's high school. When further protests on her part and on her behalf (from both her thesis advisor and her former principal) proved unavailing, Dr. Rodriguez filed charges with the Equal Employment Opportunity Commission, and instituted this suit against the school board, its President, Ronald Lockhart, and Superintendent Young, in the Southern District of New York.

The complaint alleges the facts summarized above and claims sex discrimination in violation of her constitutional and statutory rights protected by 42 U.S.C. § 1983 and Title VII, 42 U.S.C. § 2000e et seq. Fur-

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

ther, the complaint demanded both damages and injunctive relief. On July 18, 1979, Dr. Rodriguez moved the district court for a preliminary injunction restraining her transfer, which was scheduled to become effective at the commencement of the school year. On the same day, defendants moved to dismiss for want of jurisdiction or for failure to state a claim upon which relief could be granted. Before any hearing on this motion, the plaintiff obtained a "right to sue" letter from the Equal Employment Opportunity Commission and thus cured the principal jurisdictional defect alleged in the motion to dismiss, see 42 U.S.C. § 2000e–5(f)(1), which was later denied by the district judge. Both parties then submitted affidavits and presented testimony at a preliminary hearing on Dr. Rodriguez's motion for the injunction pendente lite. Defendants' position was that Dr. Rodriguez, because of her expertise in "two-dimensional skills," was the junior high school teacher best qualified to teach in the elementary schools. These considerations, along with an apparent personality conflict between Dr. Rodriguez and her principal, Dr. Savage, were said to form the basis of the decision to transfer her. Affidavits and testimony presented by the appellant supported the not inconsistent proposition that she was also the system's best qualified junior high school teacher. In addition, Dr. Rodriguez offered statistics drawn from the school system's Teacher Directory purporting to show a disproportionate percentage of female teachers in the elementary grades, and presented affidavits and testimony demonstrating that the transfer was, in effect, a demotion that would constitute a serious professional setback and stigma to her career. She did not, however, contest the statement of Superintendent Young that "[t]he transfer of Dr. Rodriguez does not and will not diminish her salary; does not and will not reduce her benefits, her seniority rights, or add any increased load to her work performance. The difference is the site of her work and the age of her pupils."

The district court denied the motion for a preliminary injunction at the close of the hearing. Judge Werker stated, however, that if Dr. Rodriguez could present statistics showing the proportion of female applicants for elementary school positions, along with their qualifications to bolster her showing of disproportionate female representation in the lower grades, "there may be a cause of action."

Dr. Rodriguez, accordingly, filed extensive interrogatories designed, in part, to elicit the statistical evidence referred to by the district court. The appellees responded with a "motion for a protective order and to strike demand for damages" which also renewed their earlier motion to dismiss. In granting this motion, the district judge stated that he was acting pursuant to Fed. R.Civ.P. 12(b)(6). Nevertheless, his extensive reliance upon facts de hors the pleadings presented in connection with the preliminary injunction motion, had the effect of making his disposition, at least in part, as one granting summary judgment for defendants pursuant to Fed.R.Civ.P. 12(c), 56. Because of the court's action, the judge was required to draw all reasonable inferences and resolve all genuine disputes in favor of the plaintiff. The court, nevertheless, concluded that a complaint alleging sex discrimination under Title VII "cannot survive dismissal merely because plaintiff seeks to assuage hurt feelings and injured pride. A decision by a school board to transfer a teacher without any concomitant loss of salary, benefits, seniority or tenure to that teacher would be at the school board's peril if this court were to find a Title VII claim present under these facts." Dr. Rodriguez's alternative claim under 42 U.S.C. § 1983 was dismissed for failure to allege bad faith. In the district judge's opinion, "[e]ven if plaintiff's sex was one of the factors considered by Dr. Young in reaching his determination, the transfer of a woman for valid educational reasons without any accompanying adverse economic impact on her and without any indication or allegation of bad faith does not warrant the interference of a court in the decision-making process of a school system." Appellant was thus deprived of discovery and a trial on the merits.

## II

### A.

■ Title VII renders it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex, . . . or to limit, segregate, or classify his employees . . . in any way which would deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a). The quoted language makes it abundantly clear that Congress did not intend to confine the scope of Title VII simply to instances of discrimination in pecuniary emoluments. Appellant's substantially uncontradicted evidence indicated that the art programs at the elementary level were so profoundly different from those in the junior high school as to render utterly useless her twenty years of experience and study in developing art programs for middle school children.

■ As the district court recognized, the transfer represented a "severe professional . . . trauma." This radical change in the nature of the work Dr. Rodriguez was called upon to perform constitutes interference with a condition or privilege of employment adversely affecting her status within the meaning of the statute.

■ In her complaint, Dr. Rodriguez alleges that there has never been a male grade school art teacher in the Eastchester schools. Moreover, when the complaint was dismissed, she was in the process of developing support for her claim that under defendants' teacher assignment policy, female teachers in the Eastchester system are relegated to the lower grade levels. If substantiated, the appellant contends, these allegations would prove nothing less than segregation, depriving female teachers of the opportunity to instruct older, more advanced pupils. Regardless of whether a higher wage-rate is at issue, female teachers have the statutory right to compete on an equal basis with their male counterparts throughout the entire school system. While this sort of sex stereotyping may once have been a virtually unquestioned feature of our national life, it will no longer be tolerated. See Sprogis v. United Air Lines, Inc., 444 F.2d 1194 (7th Cir.), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); Laffey v. Northwest Airlines, Inc., 567 F.2d 429 (D.C.Cir. 1976), cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

### B.

■ Turning to Dr. Rodriguez's claim under 42 U.S.C. § 1983, there is little doubt after the Supreme Court's decision in Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), that sex discrimination claims may properly arise under the fifth and fourteenth amendments. Nevertheless, it is also well settled that school officials are clothed in a qualified, "good-faith" immunity from suit for damages under § 1983, to spare individuals employed by the state the crushing burden of financial liability for acts performed in the course of their official duties if reasonably believed by them to be lawful at the time. See Owens v. Haas, 601 F.2d 1242 (2d Cir. 1979). This immunity, however, has never been thought to extend to suits for injunctive relief. See Wood v. Strickland, 420 U.S. 308, 314 n.6, 95 S.Ct. 992, 997, 43 L.Ed.2d 214 (1975). Thus, where injunctive relief is at issue, there is no reason to exempt the wrongful acts of school officials from judicial scrutiny simply because they reasonably believed their conduct to be proper. Moreover, the Supreme Court's recent decision in Owen v. City of Independence, Mo., —— U.S. ——, 100 S.Ct. 1398, 63 L.Ed.2d 673, requires reconsideration by the district court of the claim of appellee Board of Education to the qualified good-faith immunity that protects individual public officials.

■ We recognize that the complaint seeks both money damages and injunctive relief in a single clause following the two claims for relief. It may be that Dr. Rodriguez intends that only the Title VII claim support her demand for damages, in which

case the complaint is facially sufficient. If, however, she seeks damages under § 1983 against appellees Young and Lockhart as well, it would have been reasonable for the district court to have given her leave to amend the complaint to allege bad faith. *Cf. Gomez v. Toledo*, 602 F.2d 1018 (1st Cir. 1979), *cert. granted*, —— U.S. ——, 100 S.Ct. 701, 62 L.Ed.2d 666 (1980) (§ 1983 complaint dismissed for failure to allege bad faith where no motion to amend the complaint was made). In any event, even absent an allegation of bad faith, Dr. Rodriguez's prayer for injunctive relief was sufficient to withstand a motion to dismiss. Accordingly, we remand to the district court with instructions that Dr. Rodriguez be permitted to amend her complaint to either allege bad faith on her § 1983 claim or limit her request for damages against appellees Young and Lockhart to the claim arising under Title VII.

### C.

▮ Finally, we note that whether the district court's decision is treated as a grant of summary judgment or as a dismissal under Rule 12(b)(6), the court inappropriately made a finding of fact against Dr. Rodriguez when it concluded that she was transferred "for valid educational reasons." *See Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317 (2d Cir. 1975); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir. 1980). The thrust of her claim is a challenge to the validity of the reasons advanced by her employers for the transfer. Under Title VII it is axiomatic that a plaintiff must be accorded an opportunity to rebut legitimating explanations put forward by the defendant for actions alleged to be discriminatory through proof that they are mere pretexts for forbidden motivation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973). This showing may be made either through direct evidence of subjective intent, or through statistical proof revealing a pattern of teacher assignments indicative of a discriminatory purpose. *Id.* at 804–05, 93 S.Ct. at 1825, 1826. In the case at bar, Dr. Rodriguez submitted affidavits rebutting the appellees' professed innocent motives, and therefore presented a triable issue of fact that should not have been resolved by summary judgment. *Judge v. City of Buffalo*, 524 F.2d 1321 (2d Cir. 1975). Moreover, if consideration of appellant's sex is found to have caused appellees' decision, she will be entitled to relief. *See Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Barnes v. Costle*, 561 F.2d 983 (D.C. Cir. 1977).[1]

---

1. Dr. Rodriguez's claim for attorney's fees incurred in connection with this appeal is premature. Title VII's provision for fee awards to the "prevailing party," 42 U.S.C. § 2000e–5(k), is applicable only upon victory on the merits in the trial court. Since the defenses raised below on the motion to dismiss were not so frivolous as to invoke our inherent, equitable power to

tax attorney's fees "when litigants proffer meritless defenses in bad faith," *Faraci v. Hickey-Freeman Co., Inc.*, 607 F.2d 1025 (2d Cir. 1979); *accord, F. D. Rich Co., Inc. v. Industrial Lumber Co., Inc.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974), we deny the attorney's fee claim without prejudice to renewal in the trial court following an adjudication on the merits.