67 F.3d 293
 67 Empl. Prac. Dec. P 43,799
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Aleda M. BUNCH, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 94-2269.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Aug. 15, 1995.
Decided: Sept. 25, 1995.
 
 Aleda M. Bunch, Appellant Pro Se. David Ira Salem, Assistant United States Attorney, Baltimore, Maryland; Eileen Marie Houghton, SOCIAL SECURITY ADMINISTRATION, Washington, D.C., for Appellee.
 Before HALL and MURNAGHAN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Aleda M. Bunch, a federal employee, appeals the judgment in favor of Defendant, Donna E. Shalala, Secretary of the Department of Health and Human Services (HHS), denying Bunch relief under the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. Sec. 621-634 (West 1985 & Supp.1995), and Title VII, 42 U.S.C. Sec. 2000e-16 (1988). For the reasons discussed below, we affirm in part. We also remand in part for additional factfinding by the district court.
 
 
 2
 Bunch, who works for the Social Security Administration, (SSA) sued her employer, Otis Bowen,[1] Secretary of HHS, alleging age and gender discrimination.[2] Bunch alleged several forms of discrimination. She claimed she was: (1) denied credit for supervisory work that she had done; (2) denied promotions to supervisory positions which were given to male employees; (3) victimized by promotion procedures which had a disparate impact on older women; (4) treated differently as a woman, and as an older woman, with regard to the terms and conditions of her employment; and (5) subjected to a hostile work environment.
 
 
 3
 During the time covered by her complaint, Bunch was employed as a level GO-13[3] Computer Systems Analyst in the Office of Programmatic Systems (OPS) for SSA. Bunch claimed that over a thirteen-year period in which she was a GO-13, she watched several less educated men in her position gain promotions to supervisory positions for which she applied. Specifically, Bunch pointed to four males who attained GO-13 status at approximately the same time that she did. Of the four men, all were promoted to GM-14 status within eight years. Two attained promotions to GM-15, and the other two left. All had less education than Bunch. Bunch noted that two similarly situated females at SSA during the same period were also denied promotions beyond GO-13.
 
 I.
 A. Competitive Promotions
 
 4
 Bunch alleged that in 1985 she applied for competitive promotion to twelve different Grade 14 data processing positions. Of the twelve positions, she alleged, six were filled by males, five were cancelled, and one was filled by a female. Bunch also claimed that recency requirements--which discounted skills or training acquired too far in the past--as well as the educational and subjective factors used to evaluate candidates, "varied greatly for similar positions and thus were not true and valid requirements based on bona fide occupational considerations." Bunch alleged that these factors impacted adversely on women, as was reflected in the low percentage of women, and particularly older women, in upper level positions.
 
 
 5
 Bunch alleged further that an analysis of supervisory-level employees at OPS and SSA generally disclosed a statistically significant lack of females in such positions. She maintained that this environment "discouraged ... women, lowered their morale, and frustrated their hope of having equal opportunity based on merit." Moreover, Bunch noted that despite forty-four percent of the OPS work force being over age forty, only ten percent of promotions to Grade 11 through 15 went to persons over forty during 1984-85.
 
 B. Noncompetitive Promotions
 
 6
 Bunch maintained that during most of her thirteen years as a GS-13, she "served informally in a supervisory capacity," but "was not given appropriate recognition in the form of a 'GM' (supervisory/management) designation in her title, or a blue supervisory building pass." Bunch averred that, as a result, she was improperly denied a non-competitive promotion through the official reclassification of her duties as supervisory. Such denial resulted in the loss of the attendant salary increases and promotional opportunities afforded supervisory personnel.
 
 
 7
 Bunch focused on her appointment to head of the Decision Support Staff (DSS)[4] as an example of her supervisory duties. Bunch alleged that as head of DSS for more than a year she "developed a work plan for DSS, participated as part of the management team in discussions ... for selecting employees for the DSS, and evaluated the employee applications." Once the unit was functioning, Bunch "ran the DSS (attended staff meetings as the head of DSS, made work assignments, signed leave slips, scheduled work, evaluated performance, etc.) until spring of 1986." Bunch noted that the male heads of both the Technical Support Staff (TSS) and Systems Management Staff (SMS) were given GM-14 status, but she was not. Bunch alleged further that her male replacement at DSS, Jerry Kirschner, was given a blue supervisory badge, while she received a white nonsupervisory badge.
 
 
 8
 In addition to her position with DSS, Bunch averred that she "had served as a supervisor/manager for years prior to the inception of the DSS." She alleged that prior to 1982, she "continuously handled for one [Supplemental Security Income (SSI) ] division the same functions that a white male Grade 14 deputy division director ... handled for the other SSI division." Nevertheless, Bunch maintained, Defendant denied her a noncompetitive promotion through reclassification, even though her job entailed "an equal or higher level of skill, an equal or higher level of effort, and an equal or higher level of responsibility, than the ... duties assigned to similarly situated GM-14 males." Bunch singled out Ralph DeAngelus, Director of OPS and Bunch's direct supervisor, as particularly discriminatory in his treatment of her, and of women generally. During DeAngelus's tenure, Bunch alleged that only one of seven employees promoted to Grade 14 status was female.
 
 C. Terms and Conditions of Employment
 
 9
 Bunch claimed that she was assigned to a predominantly female department at SSA based on her gender. Instead of assigning Bunch to a Supervisory Application Systems (SAS) section chief position in OPS as she requested, DeAngelus moved Bunch from her position as head of DSS to a subordinate position at SMS, a department which Bunch alleged offered "reduced opportunities for promotion" internally, and "reduced opportunities for promotion out of SMS to other components in the Office of Programmatic Systems." There was only one Grade 14 position available at SMS, which was filled by lateral transfer of an existing male GM-14. Bunch alleged that DeAngelus told her that she needed to "prove herself" by working at SMS before being promoted. According to Bunch, "[s]imilarly situated males were not required 'to prove' themselves."
 
 
 10
 Moreover, claimed Bunch, transfer out of SMS was extremely difficult, because the work performed at SMS did not relate to the "type of applications systems design, analysis, programming, and management done in the OPS applications divisions." She noted further that "because of the recency requirements [for competitive promotions], any experience that employees had prior to coming to SMS would quickly 'age out' and not count towards promotion." Bunch noted that the SMS staff was more than eighty percent female, while sixty percent of the total OPS staff were male.
 
 
 11
 Finally, Bunch maintained that the general treatment of women by the predominantly male managerial staff at SSA created an environment unfavorable to female employees. Included in Bunch's complaint was the testimony of several female employees, all of whom identified disparate treatment of women in such areas as job assignments, promotions, social interaction, inclusion at staff meetings, awards and other recognition. Moreover, witness testimony alleged a general supervisory mentality that viewed women according to outmoded notions of gender roles, treated women's careers as less important than men's, and reserved for female employees such tasks as "obtaining presents for secretaries, organizing picnics, bond drives, etc."
 
 D. Hostile Environment
 
 12
 Bunch alleged, in general terms, that male supervisors at SSA created a hostile working environment for women, through harassment and abusive behavior toward their female subordinates. Bunch alleged that on several occasion her supervisor used profanity when speaking to her. Other witnesses averred to incidents of sexually suggestive or demeaning comments made by supervisors to females.
 
 E. Proceedings
 
 13
 Bunch notified her Equal Employment Opportunity (EEO) Counselor of the perceived discrimination on December 19, 1985. Dissatisfied with the Counselor's Report, Bunch filed her formal EEO complaint on January 24, 1986. After her administrative claim proved unsuccessful, Bunch filed suit in federal court. Before trial, Defendant was granted partial summary judgment as to the competitive promotion portion of Bunch's claim, because the court found that Bunch failed to speak to an EEO counselor within thirty days of any alleged discriminatory act, as is required under 29 C.F.R. Sec. 1613.214(a)(1)(i) (1986).[5] The rest of the case proceeded to a bench trial.[6] After the parties presented their positions, the magistrate judge issued an order granting judgment in favor of Defendants. In the opinion accompanying the judgment, the magistrate judge treated three of Bunch's claims--(1) Defendant's failure to credit Bunch with her supervisory duties and reward her accordingly, (2) Defendant's discriminatory promotion policy, and (3) Defendant's unequal treatment of women and older women in the terms and conditions of employment--as facets of a single noncompetitive promotion claim. Adopting the findings of an earlier memorandum, the magistrate judge proceeded as if "the only issue remaining for trial was whether the plaintiff was denied a noncompetitive promotion to a GM-14 while at DSS as a result of her sex and/or age."
 
 
 14
 The magistrate judge found that Bunch had established a prima facie case of gender, but not age, discrimination. However, the magistrate judge concluded that the Defendant successfully rebutted the prima facie case. Although Bunch did perform "first-level supervisory duties" as head of DSS, the court found that she did not have duties comparable to those of the male GM-14 supervisors heading SMS and TSS with whom she compared herself. The court determined that DSS was merely a temporary task force, while SMS and TSS were permanent organizational units within OPS. Moreover, such ad hoc task forces as DSS were common within OPS, and "were often headed by nonsupervisory GS-13 'project leaders' or 'project managers' or 'team leaders.' " Finally, the court noted that Bunch's male successor at DSS "was and still is[7] a nonsupervisory GS-13."
 
 
 15
 The court pointed to other general evidence offered by the Defendant to rebut Bunch's prima facie case. First, there was never a job opening for a supervisory position at DSS. Second, there was no intent to establish DSS as a permanent entity of OPS. Third, the court found that "no one has ever been promoted noncompetitively by accretion of duties in OPS." Finally, the court accepted Defendant's explanation that, had it been aware of any Grade 14 duties assigned to Bunch, it would have "performed a desk audit and taken away from [Bunch] any Grade 14 duties she was performing." The court also held that Bunch's evidence was insufficient to establish a hostile work environment. The judge deemed much of the anecdotal evidence of sexual harassment offered by her co-workers to be incredible. Moreover, the court held that even if all the testimony were credible, it was insufficiently severe to establish the existence of a hostile work environment.
 
 
 16
 Pursuant to Fed.R.Civ.P. 52 and 59, Bunch filed a Motion to Alter or Amend the magistrate judge's findings and judgment. Bunch maintained, in part, that the magistrate judge mistakenly attributed to her the "prompting" of a witness at a deposition, when it was defense counsel who had examined the witness in this manner. Bunch contended that this mistake affected the judge's credibility determination as to that witness, who had testified to harassment by her male supervisors. In response, the magistrate judge amended the memorandum opinion to correct the error, but held that, as was noted in the original opinion, the witness's credibility did not affect the judgement.
 
 
 17
 The magistrate judge denied the remainder of Bunch's motion. Concerning Bunch's contention that the court had failed to address her Equal Pay Act claim, the magistrate judge explained that his finding that Bunch did not perform work comparable to that of Grade 14 supervisors negated her claim. The judge regarded the other points raised in Bunch's motion as "merely attempts to reargue [her] case." Bunch filed a timely notice of appeal from both the original judgment and the motion to alter or amend. She excepts on a variety of grounds, which we address below.
 
 II
 A. Additional Grounds for Relief
 
 18
 Bunch asserts that the court failed to address all the claims raised in her complaint. Specifically, she refers to the court's grouping of her claims into three general headings--competitive promotions, noncompetitive promotions, and terms and conditions of employment. Bunch believes that the court did not consider the terms and conditions portion of her complaint. Moreover, she avers that the court failed to address issues that she raised in the administrative record.
 
 
 19
 Bunch claims that the court ignored the Defendant's failure to promote her from GS-13 to GM-13, focusing instead on the denial of promotion from Grade 13 to Grade 14. We find this charge unjustified. The district court thoroughly examined the issues raised in Bunch's noncompetitive promotion claim. In the course of this examination, the court analyzed the duties performed by Bunch in comparison to others who had higher official status at SSA. Although the court did use GM-14 employees for purposes of that comparison, Bunch did not provide data concerning the duties and responsibilities of other GM-13 workers in her complaint, or in the record. Moreover, the district court noted that task forces, such as the DSS unit that Bunch ran, were often headed by "GS-13 project leaders", and that Bunch's replacement at DSS was a male "nonsupervisory GS-13." The court, therefore, did not fail to distinguish between GM-13 and GS-13 to Bunch's detriment. Because Bunch failed to differentiate herself from other GS-13 employees, or to show her similarity to other GM-13s through her assignment at DSS, the court did not need to address separately her entitlement to GM-13 status.
 
 
 20
 Bunch maintains that she raised the issue of discrimination as to the terms and conditions of her employment, and that this issue was independent from both her hostile work environment claim and her noncompetitive promotion claim. She offers her transfer to the "predominantly female, dead end SMS against [her] protests and [DeAngelus's] statement that [she] had to go to SMS 'to prove [her]self' " as evidence that the terms and conditions of her job were different that those of male employees. Bunch also points to the testimony of several witnesses, men and women, who provided anecdotal evidence of disparate treatment of female employees.
 
 
 21
 Discriminatory job assignments to a certain department or work area are forbidden under Title VII, see Wright v. Olin Corp., 697 F.2d 1172, 1179-81 (4th Cir.1982), even if such assignments do not harm a plaintiff economically. Rodriguez v. Board of Education, 620 F.2d 362, 366 (2d Cir.1980); James v. Stockham Valves & Fittings Co., 559 F.2d 310, 333 (5th Cir.1977), cert. denied, 434 U.S. 1034 (1978); Swint v. Pullman-Standard, 539 F.2d 77, 92 (5th Cir.1976).
 
 
 22
 In Rodriguez, the court found a cognizable claim for disparate terms and conditions of employment when a junior high school art teacher alleged that she was transferred to an elementary school based upon her gender. Rodriguez, 620 F.2d at 364. Despite uncontroverted evidence that the new job did not change the plaintiff's salary, seniority rights, or workload, the court allowed a prima facie case of discrimination to be made by a showing of a "disproportionate percentage of female teachers in the elementary grades, and [ ] affidavits and testimony demonstrating that the transfer was, in effect, a demotion that would constitute a serious professional setback and stigma to her career." Id. at 365.
 
 
 23
 The district court's disposition of Bunch's disparate terms and conditions claim regarding her transfer to SMS is unclear. In its findings concerning Defendant's second summary judgment motion, the court stated, "Plaintiff's claim of discriminatory failure to promote her noncompetitively may be divided into three parts: (1) failure to recognize plaintiff's supervisory abilities and to reward her with accompanying benefits, (2) adverse promotional policies towards females and older employees, and (3) unequal treatment in terms and conditions of employment." However, in an order denying Defendant's third motion for summary judgment, the court declared that there was "but one claim remaining in this case and that is that the plaintiff was denied noncompetitive promotion because of her sex and/or age." After trial, the court's memorandum opinion addressed the failure to promote issue, the hostile environment issue, but not the allegation of disparate terms and conditions of employment.
 
 
 24
 It appears that somewhere between the Defendant's second and third motions for summary judgment, one of Bunch's claims was overlooked. On this issue, therefore, we remand to the district court, with instructions to the magistrate judge to make findings as to whether Bunch's transfer to SMS was gender-based and violated Title VII's proscription against differential treatment as to the terms and conditions of employment.[8] Wright, 697 F.2d at 1179-81; Rodriguez, 620 F.2d at 365-66.
 
 
 25
 Bunch also avers that the court improperly restricted the relevant time period of her complaint to March 1984 through December 1985. Bunch insists that her complaint alleged a pattern of discrimination by DeAngelus from March 1983 through March 1986.
 
 
 26
 A review of the magistrate judge's findings reveals that the court did not overlook Bunch's evidence of discrimination prior to March 1984. The court took notice of Bunch's work prior to serving on the DSS, including her allegation of her "prior supervisory accomplishments such as the 7155 restructuring project." Moreover, the court found as a fact that Bunch "was assigned at various times to be a 'nonsupervisory' GS-13 project leader ... prior to her assignment to the DSS task force." The court also recognized that on the 7155 restructuring project, Bunch "acted as a co-liaison with a male Grade 14." Bunch's appeal on this issue is plainly without merit.
 
 B. Findings of Fact
 
 27
 Bunch lists several of the district court's findings of fact that she believes are incorrect. On appeal from a bench trial, this court accepts the district court's factfinding "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judges of the credibility of the witnesses." Fed.R.Civ.P. 52(a); see Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985); United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
 
 
 28
 Bunch faults the district court's factfinding relating to her hostile environment claim. Bunch claims that the magistrate judge erred by discounting the testimony of a witness who testified to harassment she had received from various male supervisors at SSA. The judge acknowledged in amending his memorandum opinion that he had mistakenly charged Bunch with "much prompting" of the witness at trial, when in fact defense counsel had done the prompting on cross examination. Bunch contends that, in light of this admission, the court's finding that the witness was not credible was clearly erroneous. Moreover, Bunch alleges that "[t]he[c]ourt made a clearly erroneous conclusion [in its original opinion] that it wouldn't make any difference whether or not the witness was credible."
 
 
 29
 As stated above, credibility issues are left to the factfinder, and will not be disturbed on appeal. The magistrate cited other justification for his finding that the witness was not credible, including "the demeanor and look of the witness as well as the inherent incredibility of her testimony, including the fact that she had never before told anyone of the alleged sexual harassment." Therefore, we cannot find that the district court's credibility determination is clearly erroneous.
 
 
 30
 Because the magistrate judge's credibility determination stands, Fed.R.Civ.P. 52(a), we find that Bunch's second objection--that the magistrate judge erred in finding that this witness's credibility was not determinative in the case--is meritless. Nevertheless, we will review her claim.
 
 
 31
 To establish a hostile work environment under Title VII, Bunch must show that her "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of [Bunch's] employment and create an abusive working environment.' " Harris v. Forklift Sys., Inc., 62 U.S.L.W. 4004, 4005 (U.S.1993) (quoting Meritor Savings Bank v. Vinson, 477 U.S. 57, 65, 67 (1986)) (internal citation omitted). The Harris court emphasized that "hostile environment" connotes more than conduct that is merely offensive. Harris, 62 U.S.L.W. at 4005. More importantly, Harris makes plain that Bunch must show her own subjective awareness of the harassment. Id.
 
 
 32
 Because the witness in question testified only to her own experiences at SSA--experiences of which she told no one--rather than to incidents involving Bunch or public behavior by her male supervisors, her testimony could not have established the existence of a hostile work environment as to Bunch. We agree with the magistrate judge that the witness's credibility is irrelevant.
 
 
 33
 Bunch states that the court incorrectly found that the male employees cited in her complaint were not similarly situated to her, and so could not be used as comparitors in support of her disparate treatment claim. In her complaint, Bunch identified four men--Tony Protani, Pete Malinowskas, Al Diem and Steve Lippenholz--who worked with her in the SSA's Division of Computer Technology beginning in 1967-68. All four of these men later attained Grade 14 status within SSA. The magistrate judge recognized that Bunch and the male employees with whom she compared herself started at SSA at roughly the same time. However, the judge found that beginning in 1973, when Bunch and these men had reached Grade 13 status, their careers at SSA took such different paths that a comparison was not instructive.
 
 
 34
 The record strongly supports the court's finding. Of the four men identified by Bunch as similarly situated, two left SSA by 1983, prior to the alleged discrimination against Bunch. Moreover, according to Bunch's data, none of the four men received a promotion after 1982. Thus, in comparing herself to these men, Bunch made no showing of disparate treatment during the period at issue in her case. Bunch offers no evidence that she performed similar duties as these men while a GS-13, or that she competed with them for positions. Because the record discloses no evidence that the four men listed in Bunch's complaint were similarly situated to her during the time covered by her suit, we uphold the court's finding of fact on this issue.
 
 
 35
 Bunch objects to the court's reliance on Defendant's proffered evidence regarding Bunch's job duties in 1985. Bunch contends that the evidence contradicted Defendant's interrogatory responses, and thus should have been excluded at trial. However, the court at a bench trial enjoys wide discretion in hearing evidence. United States v. Smith, 390 F.2d 420, 422 n. 2 (4th Cir.1968); Northern Heel Corp. v. Compo Industries, Inc., 851 F.2d 456, 468 (1st Cir.1988). Bunch's objection as to the admission of this evidence is meritless.
 
 
 36
 Bunch asserts that the district court left "substantial portions of trial evidence" unaddressed, and made findings of fact devoid of evidentiary support in the record. Specifically, Bunch notes that the court did not mention the testimony of several of Bunch's co-workers, who had allegedly observed discriminatory practices. The district court's opinion is not required to allude to every piece of evidence presented at trial. Bunch's vague objection on this point must fail.
 
 
 37
 Bunch also avers that the district court's findings regarding a blue supervisory building pass given to Bunch's male successor at the DSS lacked an evidentiary basis. The district court found that the pass was given to the male employee prior to his association with the DSS so he could admit vendors into the building. The court also found that the pass was not changed after Bunch complained because it was inconvenient to do so, and because Defendant was waiting for the outcome of Bunch's EEO complaint.
 
 
 38
 The record reveals that the magistrate judge did base his findings on evidence submitted by the defense. In an affidavit, DeAngelus stated that "Mr. Kirschner has had the blue pass for years, not since taking responsibility for the [DSS]." Moreover, in Defendant's motion for summary judgment, Defendant recalled that after the EEO Counselor informed SMS Director Louis Wolfe of Bunch's complaint regarding Kirschner's blue pass, Wolfe and DeAngelus decided to leave Kirschner with the pass "because he would be dealing with vendors." Wolfe's affidavit confirmed this reason for Kirschner's blue pass. We find, based on the record, that the judge's decision to credit Defendant's explanation of the blue pass does not amount to clear error. Anderson, 470 U.S. at 574.
 
 C. Applications of Law
 
 39
 Bunch contends that the district court erred in applying a reasonable person standard, rather than a reasonable woman standard, when assessing her hostile environment claim. However, the Supreme Court has explicitly adopted the reasonable person standard in the context of a hostile environment claim under Title VII. Harris, 62 U.S.L.W. at 4005. This Circuit has consistently employed a "reasonable person" standard when adjudicating hostile environment claims under Title VII. See, e.g., Paroline v. Unisys Corp., 879 F.2d 100, 105 (4th Cir.1989).
 
 
 40
 Bunch alleges that the court applied the wrong legal standard in determining at summary judgment that she failed to exhaust her administrative remedies with respect to competitive promotions. Bunch states, "The [c]ourt failed to consider that the burden of proof in establishing failure to exhaust remedies is on the [D]efendant[,] and that the starting point for the clock in an administrative claim is from when the employee reasonably became aware of the discrimination."
 
 
 41
 We find no merit to Bunch's claim that the district court mistakenly required her to prove that she exhausted her administrative remedies. After Defendant raised the exhaustion issue at summary judgment, Bunch failed to allege or offer any evidence that she was denied any of the contested competitive promotions within thirty days of her EEO complaint, as is required by 29 C.F.R. Sec. 1613.214(A)(1).
 
 
 42
 Although failure to exhaust is an affirmative defense which the Defendant must prove, Young v. National Ctr. for Health Servs. Research, 828 F.2d 235, 238 (4th Cir.1987), a plaintiff must at least create a genuine issue of material fact to survive summary judgment. Fed.R.Civ.P. 56(e). As the Fifth Circuit has stated, "the doctrine of exhaustion of available administrative remedies requires a federal court plaintiff to establish that all claims which could have been entertained by the administrative agency were in fact presented to that agency for resolution." Beale v. Blount, 461 F.2d 1133, 1140 (5th Cir.1972); see Zografov v. V.A. Medical Ctr., 779 F.2d 967, 968 (4th Cir.1985). Bunch simply created no dispute as to the facts underlying the exhaustion issue.
 
 
 43
 Also contrary to established law is Bunch's contention that the starting point for the administrative process in a federal employees's Title VII claim is the date the employee discovers the discriminatory nature of the adverse action. Rather, the relevant date is the date of the adverse action itself, or the date of notification thereof. 29 C.F.R. Sec. 1613.214(a); Young, 828 F.2d at 237 ("It is also settled that the applicable administrative deadlines run from the time of the discriminatory act."); see also Lorance v. AT & T Technologies, Inc., 490 U.S. 900, 904 (1989); Delaware State College v. Ricks, 449 U.S. 250, 258 (1980).
 
 
 44
 Bunch alleges further that the district court used an incorrect standard at summary judgment regarding disputed factual issues and credibility determinations. We disagree.
 
 
 45
 This court reviews de novo an award of summary judgment. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988). Summary judgment should be granted only when there is no genuine issue of material fact such that a rational factfinder could rule in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986). The existence of a genuine issue turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. The party opposing summary judgment must offer "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). However, the nonmovant is entitled to all justifiable inferences that may be drawn from the facts alleged. Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir.1990). Moreover, summary judgment is inappropriate when a disputed material fact requires a credibility determination for resolution. Gray v. Spillman, 925 F.2d 90, 95 (4th Cir.1991).
 
 
 46
 In this case, the court granted summary judgment to Defendant only as to the competitive promotion issue. The district court's analysis focused entirely on Bunch's failure to give timely notification of the alleged discriminatory practice to her EEO counselor, as is required under 29 C.F.R. Sec. 1613.214(A)(1)(i), (ii).
 
 
 47
 Bunch did not aver that she was denied a competitive promotion within thirty days of her notification to the Counselor. Nor did she provide any evidence of affirmative misconduct by the SSA, which might justify tolling the filing deadline under the doctrine of equitable estoppel. Zografov, 779 F.2d at 969. Moreover, she did not raise the competitive promotion issue until 1987, more than a year after filing her EEO complaint. Because the district court merely applied established law to uncontested evidence, there were no disputed issues of fact or credibility affecting its decision. Accordingly, we affirm the award of summary judgment on this issue.
 
 
 48
 Bunch also contends that the district court did not provide her with an adequate "opportunity to respond to [D]efendant's declarations in support of [s]ummary [j]udgment." Specifically, Bunch asserts that "Defendant filed an inappropriate response to[her] opposition to [Defendant's] second motion for summary judgment," which contained new statements from several witnesses. Bunch says that she would have filed a motion to strike portions of this testimony if she had known that she still could still have used the testimony to impeach other witnesses. In addition, Bunch states that when she asked the judge whether to file a response, "the judge told [her] not to file anything."
 
 
 49
 Although the magistrate judge did permit Bunch to withdraw her motion to strike, there is no legal doctrine requiring a judge to question a plaintiff's decisions. That Bunch's litigation strategy may have been shaped by her misunderstanding of the Federal Rules of Evidence can in no way be attributed to the judge presiding in her case, who was unaware of that misunderstanding.
 
 
 50
 The judge's determination that he had adequate materials upon which to rule on Defendant's summary judgment motion likewise was not error. Under Fed.R.Civ.P. 56(e), a judge in his discretion "may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." The language in the Rule is permissive, not obligatory. Moreover, Bunch was required under the Rule to establish by her first response that summary judgment was inappropriate. Fed.R.Civ.P. 56(e).
 
 
 51
 Fatal to Bunch's allegation is that the award of partial summary judgment to Defendant turned not on the credibility of Defendant's affiants, but on the undisputed fact that Bunch did not notify her EEO Counselor within thirty days of being denied a promotion. Bunch does not, even now, claim that she was denied a competitive promotion in the thirty days prior to her EEO complaint. Bunch has shown neither an abuse of discretion nor prejudice stemming from the district court's denial of her request to submit a second response.
 
 
 52
 Bunch claims that the district court used the incorrect standard in evaluating her claim under the Equal Pay Act, 29 U.S.C. Sec. 206(d) (1988).[9] Bunch articulated the Equal Pay Act portion of her case in her Motion to Alter or Amend. Denying her motion, the district held that "no such claim would lie under the facts found by the court that the plaintiff was not doing the same work as the Grade 14 supervisors of TSS and SMS." The court also noted its finding that Bunch "was not similarly situated to the male employees who were hired at the same time as she."
 
 
 53
 To state a prima facie case under the Equal Pay Act, Bunch had to show that she was paid less than a specific, identified male co-employee who performed work substantially equal in skill, effort, and responsibility under similar working conditions. Houk v. Virginia Polytechnic Inst., 10 F.3d 204, 206 (4th Cir.1993). Once Bunch established her prima facie case, the burden would shift to Defendant to show a nondiscriminatory reason for the wage differential. Keziah v. W.M. Brown & Son, Inc., 888 F.2d 322, 324 (4th Cir.1989).
 
 
 54
 The district court did not commit clear error in finding that Bunch was not performing work with duties and responsibilities equivalent to the Grade 14 male supervisors at SMS and TSS during her tenure at the DSS unit. Evidence revealed that Bunch did not sign the payroll sheets or performance evaluations of her subordinates. A factfinder could rationally conclude that Bunch was therefore not held responsible or accountable for their accuracy. The court also found that Bunch did not supervisor other Grade 13 and 14 level supervisors, as did the GM-14 supervisors at SMS and TSS.
 
 
 55
 Finally, Bunch does not dispute the court's finding that temporary task forces such as the DSS unit were often headed by nonsupervisory employees. Bunch contends instead that this fact cannot be used to determine that her job was not equivalent to a GM-14 position. However, in light of the testimony regarding her job responsibilities, we find the district court did not err in concluding that Bunch was not entitled to a pay raise.
 
 
 56
 Bunch faults the court for failing "to stop the[D]efendant from using economic war of attrition tactics as a litigation strategy." Specifically, Bunch objects to the court permitting the defense to file its second and third motions for summary judgment, and to seek a protective order for information that was posted on bulletin boards or published by the Defendant.
 
 
 57
 The district court may strike frivolous or repetitive filings, and may in appropriate cases issue sanctions. See Fed.R.Civ.P. 11. Rule 11 determinations are reviewed for abuse of discretion. Cooter & Gell v. Hartmarx Corp., 464 U.S. 384, 405 (1990); Stephens v. Lawyer's Mut. Liability Ins. Co., 789 F.2d 1056, 1057 (4th Cir.1986). Bunch makes no showing that the court abused its discretion in her case.
 
 
 58
 Finally, Bunch asserts generally that the district court "abused its discretion" and "made the wrong decision." Bunch apparently seeks a re-weighing of the evidence, which this Court will not do. See Evans-Smith v. Taylor, 19 F.3d 899, 903 n. 11, 909 n. 28 (4th Cir.1994); Grizzle v. Pickands Mather & Co./Chisolm Mines, 994 F.2d 1093, 1098 (4th Cir.1993). Absent a specific assignment of error, we uphold the district court's judgment.
 
 III
 
 59
 We affirm the district court's judgment in favor of Defendant, and its partial denial of Bunch's Motion to Alter or Amend the Judgment. We remand as to the issue of Bunch's allegedly gender-based transfer to the unfavorable, disproportionately female SMS. We instruct the magistrate judge who presided at trial to make additional findings of fact on the record.
 
 
 60
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 AFFIRMED IN PART, REMANDED IN PART
 
 
 [1]
 Over the course of this lawsuit, the Defendant has changed from Bowen to Louis Sullivan to Shalala
 
 
 [2]
 Bunch's age-related allegations focused primarily on the competitive promotion portion of her claim. The Defendant was granted summary judgment on this issue because Bunch failed to exhaust her administrative remedies. Because age discrimination was not an addressed at trial or mentioned on appeal, we will not address it
 
 
 [3]
 Bunch is currently employed by the Social Security Administration as a GM-13 Supervisory Computer Systems Analyst. She was promoted to GM-13 status in May 1988
 
 
 [4]
 The Decisions Support Systems Staff (DSS) was one of three units under Ralph DeAngelus's control at the Office of Programmatic Systems. The other units were the Technical Support Staff (TSS) and the Systems Management Staff (SMS)
 
 
 [5]
 Bunch applied for the twelve Grade 14 positions in 1985. She contacted an EEO counselor to complain of discrimination in December of 1985. However, Bunch did not formally allege that she was discriminatorily denied any vacancies for which she had applied until May 4, 1987, seventeen months after the completion of the investigation of her complaint in December of 1985, and after her attorney had submitted comments on the investigatory report. Even now, Bunch does not point to a competitive promotion that she was denied during the thirty days prior to the filing of her EEO complaint
 
 
 [6]
 The parties consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. Sec. 636(c) (1988)
 
 
 [7]
 Actually, Kirschner was promoted to GM-13 status in 1990, two years after Bunch was made a GM-13
 
 
 [8]
 We note that the magistrate judge might be able to make these findings by reference to his memory and the materials in the record, without need for a further evidentiary hearing
 
 
 [9]
 Although not mentioned in Bunch's complaint, the Equal Pay Act did emerge during the litigation as one of her theories of recovery